### WILCOX v. CARR et al.

*(Circuit Court, S. D. Iowa, W. D.* December 31, 1888.)

**MORTGAGES—PAYMENT—PRINCIPAL AND AGENT.**
    Plaintiff, a resident of Connecticut, placed in the hands of her agent in that state a sum for investment in western loans, which the agent procured to be negotiated by C., in Iowa. Part of the amount was loaned through C. to defendant, the principal and interest being made payable at the agent's office in Connecticut. C. collected the principal and interest of the various loans, including nine installments of interest, from defendant, and returned to defend-

ant his coupons. *Held,* that the payment of the principal to C. in response to the usual notice from him of its maturity was justified, and discharged the debt, notwithstanding C.'s embezzlement of it.

In Equity.

Bill by Almira R. Wilcox against Benjamin W. Carr and others for the foreclosure of a mortgage on real estate.

*Cummins & Wright,* for complainant.

*L. L. Delano* and *Lehman & Park,* for defendants.

SHIRAS, J. This suit is brought for the purpose of foreclosing a mortgage on realty, executed by Benjamin W. Carr and his wife, to secure the payment of a coupon bond for $700, dated May 1, 1880, and maturing May 1, 1885. The defense is that the debt has been paid. The evidence shows that it is another of the contests caused by the embezzlements of Hugh R. Creighton, of which several have already been heard and determined in this court, and in which the ultimate question to be solved is, which of the parties, both being free from fault, must bear the loss occasioned by the wrong-doing of the said Creighton?

In this case it is not disputed that about the date of the maturity of the mortgage debt the defendant Carr, for the purpose of paying off complainant's debt and mortgage, negotiated a loan of $650 of the German Savings Bank of Davenport, Iowa, and through Holmes, Nash & Phelps remitted the same, with $78 additional, to Hugh R. Creighton, at Des Moines; the amount thus remitted being sufficient to pay in full the principal due complainant, with the six months' interest due May 1, 1885. The money thus sent was received by Creighton, but was not forwarded to complainant; and in the June following Creighton absconded, being a defaulter in a large amount. In determining upon whom the loss must fall it is necessary to ascertain the position occupied by Creighton when he received the money, and whether he received it as the representative of the complainant or of the defendant Carr. On behalf of complainant it is claimed that as the bond and mortgage by their terms were payable at the office of B. R. Abbe, in Hartford, Conn., no payment was completed until the money was actually received at the designated place of payment; that the complainant had no knowlege of Creighton, and never authorized him to receive any payments for her; and that he must be held to be the agent of the defendant, charged with the duty of forwarding the money received from defendant to Hartford; and that the consequences of his failure so to do must fall upon defendant. On behalf of the defendant it is claimed that Creighton acted, in receiving the money, as the representative of complainant; that defendant was justified in dealing with him as complainant's representative, and in making the payment to him as such. To settle this question it is necessary to ascertain the facts attending the inception of the loan, and the relation of the parties who were instrumental in negotiating the same.

On part of complainant is submitted the testimony of complainant and of B. R. Abbe, by which it is sought to show that the latter, as the agent of the Union Loan Association of Des Moines, sold to complainant

the bond and mortgage in suit, and that there was in fact no connection between complainant and Creighton in the transaction. The true facts of the case, however, are quite clearly shown in the correspondence that passed between Abbe and Creighton. It should be first noted that the complainant, in answer to the question, "Who acted for you as your agent in making the loan to the defendant Carr?" replied, "Mr. B. R. Abbe;" and she also testified that in the early part of the year 1880, she placed in the hands of B. R. Abbe the sum of $2,000, to be by him invested in western loans for her. On January 7, 1880, Abbe wrote as follows to Creighton, at Des Moines:

"Mrs. Almira R. Wilcox, of Hartford, has left an order for $2,000 of farm loans, none of the loans to be over $500, all at 9 per cent., good choice ones. Now, Brother Creighton, I want you to get some extra loans for this lady. She has been dealing with Pearson, of Chicago, but has come to me, because I represented you as choice, reliable, and sound, and that you would get her just what she wanted. Don't disappoint her. She has more to invest beside in time. * * *"

January 21, 1880, Creighton replied to Abbe as follows:

"I have your telegram of the 20th, and Thomas A. French, Thomas Snyder, and Mary E. Dowell will be closed at once. * * * I will draw on you to-day for the Almira R. Wilcox money,—$2,000, less 1 per cent. com. to you, $20.00; amt. of draft, $1,980.00,—as authorized by your letter of the 7th inst. If I am obliged to place any of it at 8 per cent. interest I will allow you a little more. Mr. Smith of this office is out now looking up some good applications for Mrs. Wilcox."

February 12, 1880, Creighton wrote Abbe a statement, showing that he had forwarded him for Mrs. Wilcox: Note of Abraham Angervine for $200; note of August Kast for $500; and of Adam Buter for $500,— "which leaves to be placed $700; papers to be dated January 10, 1880." In a number of letters passing between Abbe and Creighton reference is made to the investment of this $700, until in letter of July 1, 1880, Abbe acknowledged receipt of the evidence of investment.

Turning now to the mortgage executed by the defendant Carr, we find it was acknowledged on the 26th day of June, 1880. Thus it is made clear that in January, 1880, the complainant placed in charge of B. R. Abbe, as her agent, at Hartford, the sum of $2,000, to be invested for her in loans upon western lands; that Abbe intrusted the actual making of the loans to Creighton; that Creighton drew for the money about January 21, 1880, the draft being for $1,980, the balance being left with Abbe as a commission due him; that in February $1,300 of the sum had been invested in the loans to Angervine, Kast, and Buter; that the remainder was not invested until about June 26th, when it was loaned to the defendant Carr, and the bond and mortgage sued on were taken and forwarded to Abbe for complainant. There can be then, no possible question that the money of complainant was by Abbe placed in Creighton's hands for investment before any loans had been secured. He held it as her money, to be invested as directed by Abbe; and in seeking the investments and in placing the loans he was beyond question acting for Abbe, and through him for the complainant. Had he then embezzled

the money, or had he otherwise failed in the proper performance of his duty, the complainant, either directly or through Abbe, could certainly have called him to account for her money thus placed in his hands. Having, however, made the investments as stated, he returned the papers to Abbe, and the question is whether he was authorized to represent the complainant in collecting the interest and principal of the loans thus made by him.

Up to the time of the disappearance of Creighton the correspondence in regard to these loans was conducted between Abbe and Creighton, and from these letters it clearly appears that to Creighton was intrusted the duty of collecting the several installments of interest as they matured, and also the principal of the loans made. In his deposition Abbe denies that Creighton had any authority in the premises, yet he admits that he never had any correspondence with the debtors in regard to the loans, and that all letters touching the same were sent to Creighton; and further that he expected that the interest and principal would be sent through Creighton to him, the loans being payable at his office. The letters, however, passing between Abbe and Creighton, as already said, clearly show that Abbe expected Creighton to look after the collection of the amount due on these loans, and at least eight payments of interest were made by the defendant Carr to Creighton, and the coupons therefor were duly returned to the defendant. As an illustration of the relation held by Creighton to these loans owned by complainant, take the correspondence in regard to the loan of Abraham Angervine. Under date of August 13, 1881, Creighton writes to Abbe:

"We find it necessary to foreclose loans No. 550, Wm. Boardman to Saml. B. Hull; No. 650, Almira R. Wilcox to Abraham Angervine; and No. 726, Wm. Bolles to Andrew J. and Fannie Childs. The papers in No. 550 are notes, mtg., and abst.; in 726 are notes, mtg., and his policy. Please send these papers, if possible, by return mail, as we have begun first two for term of court beginning Aug. 25th, and the third for a term a few days later; so please send as soon as you can. There will be no trouble to get full amount of mortgagee's claims out of the premises."

May 30, 1882, Creighton writes to Abbe:

"Get the Angervine certificate of sale from Almira R. Wilcox, and send it on, as I am informed the money is paid to the clerk of Audubon county, and interest is stopped, and we will collect and forward."

June 7, 1882, Creighton to Abbe:

"Your favor of ———— is received, with inclosures as stated, Almira R. Wilcox cert., which will be collected."

The correspondence further shows that as the six months' interest came due upon the other loans belonging to complainant for the years 1881, 1882, 1883, and 1884, the same was collected by Creighton, and forwarded to Abbe for complainant. When Abbe learned the fact that Creighton had made an assignment, he wrote him under date of June 15, 1885, as follows:

"* * * Also give me an itemized account of any monies paid to you on account of any of the mortgagees whose loans have been made payable at my

office except Wm. Bolles, viz., John Sheldon, * * * Almira R. Wilcox. * : * * . I want to know if any money has been paid to you for the account of these parties, which you have not sent to me, and, if so, how much, and from whom, as mortgagor, it was paid to you. Also you are hereby forbidden to receive any money from any mortgagor, for the account of any of the above-mentioned parties."

Further quotations need not be made from the correspondence to show that Abbe intrusted to Creighton the duty of collecting and forwarding the money due complainant,—both the principal and interest; and it is no less clear that Creighton held himself out to the defendant Carr as one authorized to demand and receive the payments as they matured.

The following, then, are the facts in this case as established by the ev· idence: In January, 1880, the complainant placed in the hands of B. R. Abbe, as her agent, $2,000, to be invested in western loans, and intrusted to him the supervision of such investments after the same had been made. B. R. Abbe applied to Creighton, at Des Moines, Iowa, to make the investments contemplated, and about January 21st the money was transferred to Creighton at Des Moines. During the months of February, March, and June, 1880, the entire sum was invested in four separate loans; one of $700 being made to the defendant Carr, the principal being payable May 1, 1885, and the interest and principal being payable at the office of B. R. Abbe, at Hartford, Conn. The arrangement between Abbe and Creighton contemplated the collection by the latter of the principal and interest of these loans as they came due, and the forwarding of the amounts collected to Abbe, at Hartford, to be by him paid to complainant. Creighton, in pursuance of this arrangement, notified the defendant Carr and the other debtors of the time when the respective payments came due, and requested payment to be made to him. The defendant Carr and the other debtors paid the installments of interest as they came due to Creighton, and subsequently received from him the coupons that had been attached to the bonds or notes executed by them. Nine payments of interest were thus made by the defendant Carr to Creighton, the coupons being returned to him through Creighton. Shortly previous to the maturity of the principal of his loan, he received a notice from Creighton of the time it would mature, and the amount needed to discharge the debt in full, which amount the defendant in due time forwarded to Creighton. The sum thus sent was received by Creighton, but he failed to forward it to Abbe, and in fact he embezzled it. These facts justify the conclusion that Abbe was the agent of complainant, with authority to invest the $2,000 in western loans, and to supervise the collection of the principal and interest thereof. That in the usual course of such business it would be necessary for Abbe to employ some party or parties in the west to make the loans and attend to the collection thereof, and that it must be deemed that Abbe possessed the right so to do. That Abbe in fact did employ Creighton, not only to invest the money, but to collect the same, and that the defendant was justified in paying the debt, when demand thereof was made of him by Creighton, to the latter. That such payment, when made, discharged the debt evidenced by the bond

and mortgage held by complainant. The facts of the case bring it fairly within the rules stated by the supreme court in *Bronson's Ex'r* v. *Chappell,* 12 Wall. 681. The defense of payment being sustained by the facts, it follows that complainant's bill must be dismissed on the merits, and that defendants recover the costs of this proceeding. Decree accordingly.