ALBERT J. TRULL v. ELLSWORTH A. HAMMOND and Others.[1]

January 13, 1898.

Nos. 10,870—(203).

**Principal and Agent—Payment of Mortgage to Agent While Securities Are Retained by Principal.**

Where a mortgagee, retaining in his own possession the mortgage papers, forwards from time to time the coupon interest notes to a third party for collection, it does not authorize the payment by the mortgagor or his grantee of the premises of the principal sum to such person as agent of the mortgagee, he not having the note and mortgage in his possession.

**Same—Authority of Agent to Receive Payment.**

The rule is elementary that an agent authorized to collect or receive payment of a debt in money cannot bind his principal by collecting or receiving in payment the note, mortgage or property of the debtor.

**Same—Findings Sustained by Evidence.**

Evidence considered, and *held* sufficient to justify the findings of the trial court.

Appeal by defendants Stener A. Stenerson and Aleck A. Stenerson from a judgment of the district court for Scott county, entered pursuant to the findings and order of Cadwell, J. Affirmed.

*C. P. Carpenter, E. & W. N. Southworth* and *Hazen M. Parker*, for appellants.

*John H. Robertson*, for respondent.

BUCK, J.

This action was commenced to foreclose a mortgage covering a quarter section of land in Scott county, in this state. The answer alleges full payment of the note and mortgage, that plaintiff had executed a written satisfaction thereof, and that the same was duly recorded in the office of the register of deeds in Scott county.

The mortgage bears date May 1, 1886, and was executed by one Ellsworth A. Hammond to the plaintiff, Trull, who then and ever since has resided in the state of Massachusetts. The note which it

---

[1] Reported in 73 N. W. 642.

was given to secure bears the same date, and was payable in five years, with interest at the rate of 8 per cent. per annum, payable semiannually, according to the terms of ten coupon notes attached thereto. The interest was paid only to July 1, 1894, and the court found that there was still due on the note and mortgage, including interest, the sum of $1,228.26.

Prior to the execution of the note and mortgage one Austin F. Kelley owned the land, and he conveyed it to Hammond, who, after giving the mortgage to plaintiff, conveyed it to Stener A. Stenerson and Aleck A. Stenerson, two of these defendants. The mortgage was duly recorded, and contained the usual power of sale in case of default in its conditions. In their answer to the foreclosure action the Stenersons allege that the note and mortgage had been fully paid, and that plaintiff, on June 7, 1892, duly made and delivered a written and printed satisfaction of the mortgage, wherein he acknowledged full payment thereof, and that such satisfaction was duly recorded in the office of the register of deeds of Scott county, in this state, on June 25, 1895. The trial court found as a fact that plaintiff never executed such satisfaction, nor any release or satisfaction of the mortgage, and that the satisfaction referred to in the answer, purporting to be recorded in the office of the register of deeds of Scott county, was never signed by the plaintiff, but that one Austin F. Kelley forged plaintiff's name thereto. And as conclusions of law the court found and decided said satisfaction null and void, and ordered the record thereof canceled. From the judgment entered thereon, the Stenersons appeal to this court.

In our opinion, the findings of the trial court are fully warranted by the facts appearing in the record. The pretended satisfaction is dated May 7, 1892, purports to have been signed by Albert J. Trull, and witnessed by and in the presence of A. F. Kelley and George Hall. The venue is stated as state of Minnesota, county of Hennepin, and acknowledged before Austin F. Kelley, notary public, Hennepin county, Minnesota, who certifies thereto as follows:

"On this 7th day of May, 1892, before me personally appeared A. J. Trull, to me known to be the person described in and who executed the instrument, and acknowledged the foregoing instrument,

and acknowledged that he executed the same as his free act and deed.

"Austin F. Kelley,<br>
"Notary Public,<br>
"Hennepin County, Minnesota."

On the trial the plaintiff, Trull, testified that he was never in the state of Minnesota until within a day or two before the trial of this action, viz. in March, 1897; that he never saw Kelley until the day of such trial; that he never signed or acknowledged the satisfaction, nor any satisfaction, of this mortgage, nor authorized any one to do so for him; that he did not know George Hall, the witness to the satisfaction, and that he never received payment of any part of the principal sum mentioned in the principal note and mortgage. This evidence was not contradicted. On the trial, Kelley testified as follows:

"Q. Mr. Kelley, you have testified here that you had in your possession at the time of the sale of this land to Stenerson a satisfaction of the mortgage here in controversy? A. Yes, sir. Q. How did that paper come into your possession? A. I think from Mr. Trull. Q. Came from Mr. Trull? A. I think so. Q. How? A. By mail. Q. Came from him by mail? A. I think so. He hadn't been here, so I couldn't get it any other way. Q. Well, was there a letter accompanying that satisfaction? A. I couldn't find any in looking through our files. Mr. Parker and I went through, and we couldn't find any letters from any one from January to July, 1892. Q. You say Mr. Trull wasn't present, and didn't execute it? A. No, sir. He wasn't in the state. I never saw him to my knowledge. Q. Do you know that satisfaction piece you refer to is witnessed by you? A. Yes, sir. Q. As having been executed in your presence? A. Yes, sir. Q. And that it is acknowledged—purported to be acknowledged—before you as notary public? A. Yes, I knew his signature, and took his acknowledgment, the same as I have taken hundreds of others."

On the trial neither the defendants nor Kelley produced the original pretended satisfaction, nor any evidence to show that Trull ever authorized its execution. By his own admissions, Kelley, as a notary public, certified to a deliberate falsehood in stating that Trull, whom he had never seen personally, appeared before him in Hennepin county and acknowledged full payment and satisfaction of the mortgage, and, apparently, as though this frank admission

needed some extenuating coloring, he voluntarily added that he knew Trull's signature, and took his acknowledgment the same as he had taken hundreds of others. If the title to hundreds of homes and pieces of land in our state is dependent upon such falsehood and rascality as this, there is certainly a necessity for greater punishment of the offender than that arising from merely finding him to be a forger of this satisfaction.

It is contended by the appellants that the material question is this: Shall the Stenersons be protected by their payment of this mortgage to A. F. & L. E. Kelley,—and not who signed the release? and that, if there is any contention between Trull and the Kelleys, it can be settled in another proceeding, and that, if the Kelleys had authority to receive payment of the mortgage in question, such payment was sufficient without any satisfaction whatever.

Before discussing the question of the business relations between Trull and the Kelleys, and its bearing upon the merits of this case, we think it quite proper to consider the conduct and standing of the Stenersons in relation to the matter.

A glaring defect in the Stenersons' defense is that they do not allege in their answer that they ever paid the mortgage, or any part of it, either to Trull or to the Kelleys for him, or to any other person for Trull. Nor do they testify that they ever paid it to any one. For some unexplained reason, they did not testify on the trial at all. True, in their answer they allege payment of the mortgage, but are utterly silent as to who paid it. On the trial they called A. F. Kelley, who testified that when he sold the land to the Stenersons they paid him $1,800 in money therefor, but on cross-examination he testified that $150, and no more, was then paid in cash, and a part of it in a mortgage; but when this mortgage, or the balance, was paid, if ever, does not satisfactorily appear. Kelley also testified that he gave Trull credit on his books for $1,000, when he had only received $150, and that such credit was not given on the book until November 1, although the satisfaction is dated May 7, 1892, and recorded June 25, 1895. Neither does it appear who placed it on record. Not only did they fail to show by their pleadings or evidence how much, to whom, by whom, and when this mortgage

was paid, but it is a notable fact that, if they paid it, they did not ask for a production of the note and mortgage and satisfaction thereof.

Nor did they inquire as to Kelley's authority to act for Trull, or that they ever knew or heard of him, or that Kelley ever acted as Trull's agent, or that there ever was any dealing or business relations between them of any kind whatever. If the Stenersons never knew or heard of any business relations between Trull and Kelley and their method of doing business, they could not have relied upon such relations as constituting apparent authority for receiving payment of the mortgage from them, even if they had paid it to Kelley for Trull. The note and mortgage were personal property, and presumptively in the possession of the owner, Trull; and no attempt was made by defendants to show otherwise, or that Kelley had either in his possession at the time of the alleged payment by Stenerson or at the time of the alleged execution of the satisfaction, or when it was recorded. It does not even appear that the Stenersons ever had the satisfaction, and it was not produced on the trial, nor was its absence satisfactorily accounted for, except upon the hypothesis,—which the trial court found to be a fact,—viz. that it was forged by A. F. Kelley.

We assume, therefore, that at the times of these alleged transactions between Kelley and Stenerson the former did not have possession or control of the note and mortgage in question, and hence he was without any apparent authority from Trull to receive payments thereon; and, if he did have it, it was not produced, shown to or relied upon by the Stenersons in making any such payments as are claimed to have been made.

There was no express authority shown from Trull to Kelley to collect the principal of the note and mortgage. The business between them as to loaning money and collecting interest was conducted entirely by correspondence, and the men had never met until the trial of this case. Not a letter or written instrument had passed between them expressly conferring upon Kelley the authority to collect the principal note and mortgage. Without entering into an analytical or detailed statement of the evidence bearing upon the course of dealing between the parties, we think it is suffi-

cient to say that the evidence upon this point utterly fails to show such a state of facts as to raise a presumption of implied authority on the part of Kelley either to collect the principal of the note and mortgage or to execute a satisfaction in Trull's name, even if it had been actually paid to Kelley.

Whether a copy of the ledger kept by Kelley was properly admitted in evidence, we need not consider. By Kelley's own testimony it was shown that the alleged payment was placed therein, not at the time when such payment was made, if made at all, but months afterwards. This, taken in connection with Kelley's contradictory evidence, the fact that he forged the satisfaction, and his other unsatisfactory evidence, would have fully justified the trial court in wholly disregarding it, as it probably did, in its finding. If not, it was insufficient to have warranted a finding thereon in favor of these defendants.

Very much, if not all, of the law to which appellants' counsel has extensively cited us is inapplicable, because based upon the assumption of facts which do not here exist.

Appellants do not show that Kelley had the note or mortgage in his possession at the time of the alleged payment, and hence it does not appear that he had any apparent authority to receive such payment. The fact that the mortgagee merely sent the coupons to Kelley to collect the interest as it became due from time to time would not authorize the payment by the mortgagor to him of the principal when it became due in the future. Joy v. Vance, 104 Mich. 97, 62 N. W. 140; Trowbridge v. Ross, 105 Mich. 598, 63 N. W. 534; Wilson v. Campbell, 110 Mich. 580, 68 N. W. 278. And the mere fact that Kelley was originally employed to make the loan and accept the note and mortgage did not confer upon him the incidental authority to collect or receive any payments which might become due thereon. Mechem, Ag. § 372. We think that the evidence fails to show that the principal of the note and mortgage was ever paid by the Stenersons in money, even to Kelley. Some $100 or $150 was the only cash paid, and the balance was a mortgage.

The rule is elementary that an agent authorized to collect or re-

71 M.—12

ceive payment of a debt in money cannot bind his principal by collecting or receiving in payment the note, mortgage or property of the debtor. Id. § 375. Parties dealing with persons who assume to act for, or as the agents of, others, must necessarily do so at their peril. The extent and nature of an agent's authority will not legally depend upon his mere representations. There must be some substantial ground for his right to act, and his authority must be direct and specific, or the facts and circumstances must be of such a nature that the agent's right to act may be fairly implied. The usual elements which constitute the indicia of a lawful agency, and the performance of acts thereunder which would bind Trull, are wanting in this case.

Judgment affirmed.