KATE M. BURCHARD v. WILLIAM E. HULL and Others.[1]

February 3, 1898.

Nos. 10,877—(268).

**Principal and Agent—Agent for Collection of Mortgage Interest Coupon—Extent of Power—Implied Authority—Foreclosure.**

The plaintiff, being the owner of a note secured by a real-estate mortgage containing a power of sale, detached from the note an interest coupon, and transmitted it to an agent for collection (that being the extent of his express authority), the plaintiff herself retaining the principal note,

1 Reported in 74 N. W. 163.

not yet due, and the mortgage. *Held*, that the agent had no implied authority to foreclose the mortgage under the power; that in such case his implied authority was limited to a resort to such remedies as might be pursued for the collection of the coupon, irrespective of the collateral mortgage.

Appeal by plaintiff from an order of the district court for Scott county, Cadwell, J., denying her motion to amend the findings and for a new trial. Reversed.

*John H. Nickell, Brooks & Hendrix* and *Hahn, Belden & Hawley,* for appellant.

An agent in whose hands an interest coupon note has been placed for collection, the owner retaining the principal note and securities given therefor, is not authorized to collect, or receive payment upon, the principal note. Mechem, Ag. § 817; 1 Jones, Mort. § 964; Smith v. Kidd, 68 N. Y. 130; Crane v. Gruenewald, 120 N. Y. 274; Cooley v. Willard, 34 Ill. 68; Doubleday v. Kress, 50 N. Y. 410; Richards v. Waller, 49 Neb. 639; Klindt v. Higgins, 95 Iowa, 529; Joy v. Vance, 104 Mich. 97; City v. Reams, 51 Neb. 225; Van Deusen v. Ingraham, 110 Mich. 38; Williams v. Walker, 2 Sand. Ch. 325; Bronson v. Ashlock, 2 Kan. App. 255; Padley v. Neill, 134 Mo. 364; Western v. Douglass, 14 Wash. 215. Where the agent is intrusted neither with the principal note nor with the mortgage he has no authority to dispose of the mortgage, or to realize upon the same, whether by sale, foreclosure or otherwise.

The fact that the record discloses a foreclosure regular in form is no protection to a purchaser to the property from the grantee at the foreclosure sale if the foreclosure was unauthorized. Bausman v. Kelley, 38 Minn. 197, 206; Welch v. Cooley, 44 Minn. 446; Hayes v. Lienlokken, 48 Wis. 509.

*Charles D. Hinds,* for respondent.

The delivery of the coupons to the agent for collection carried authority to the agent to use all proper and necessary means to accomplish the purpose of the agency. Story, Ag. §§ 58, 77, 97; Mechem, Ag. §§ 194, 386, 388; Benjamin v. Benjamin, 15 Conn. 347; Watts v. Howard, 70 Minn. 122; Ryan v. Tudor, 31 Kan. 366. Such agency gives authority to sue and direct what property to levy on.

Joyce v. Duplessis, 15 La. An. 242; Bush v. Miller, 13 Barb. 481, 488; Scott v. Elmendorf, 12 Johns. 317; M'Minn v. Richtmyer, 3 Hill, 236. In Merchant v. Woods, 27 Minn. 396, after the mortgage had been paid it was foreclosed and the property sold to a bona fide purchaser. The court held that the title of such purchaser was protected under the recording law. See, also, Bausman v. Faue, 45 Minn. 412; Bausman v. Eads, 46 Minn. 148. In the following cases the facts are nearly the same as those in the case at bar. Hatfield v. Reynolds, 34 Barb. 612; Thomson v. Shelton, 49 Neb. 644; Shane v. Palmer, 43 Kan. 481; Quinn v. Dresbach, 75 Cal. 159.

MITCHELL, J.

The facts in this case are practically undisputed. The plaintiff was a resident of Brattleboro, Vt., and a depositor and customer of the Vermont National Bank of that place. Having $1,200 which she desired to lend on western real-estate security, she authorized and requested the bank to make such an investment for her. The bank made the investment for her through A. F. & L. E. Kelley, of Minneapolis, who loaned the money to the defendant Hull, who executed therefor his note, dated January 30, 1890, payable to the order of the plaintiff, at Brattleboro, five years after date, with interest at 7 per cent. per annum semiannually, according to the terms of 10 coupon notes of even date, attached to the principal note, also payable to the order of the plaintiff, at Brattleboro, on the 1st days of January and July of each year. As security for the payment of these notes, Hull, on the same day, executed to plaintiff a mortgage, containing a power of sale, on 80 acres of land in Scott county, in this state. After recording the mortgage, the Kelleys transmitted it, together with principal note and coupons attached, to the bank at Brattleboro, which delivered them to the plaintiff, who has ever since retained them in her exclusive possession, except as she, from time to time, detached the maturing interest coupons, and delivered them to the bank for collection, as hereinafter stated.

Upon the evidence, there can be no question that up to this point the agency of the bank was special and limited, the extent of it being to make the loan for plaintiff, and that when this was done,

and the securities delivered to her, the bank's authority terminated, unless afterwards continued or renewed by the subsequent acts of the plaintiff. Plaintiff did not know the Kelleys, and had no communication with them, her dealings being exclusively with the bank. It must be assumed from the nature of the business that she knew that the bank would have to employ some one in the West to make the loan; and, from the fact that the names of the Kelleys were printed on the margin of the notes delivered to her, she may have known that the bank had employed persons of that name to make the loan. But, as a stream cannot rise higher than its source, the bank could not delegate to a sub-agent any greater authority than it itself possessed.

As each interest coupon was about to mature, the plaintiff detached it, and delivered it to the bank for collection and credit to her account. Although the coupons were payable in Brattleboro, the custom of the bank was to send them to the Kelleys for collection. The evidence is to the effect that plaintiff was not aware of this, but, as we view the case, it is immaterial whether she was or was not. The Kelleys, on receipt of a coupon, would collect it from Hull, and remit the proceeds to the bank, which then placed them to the credit of plaintiff's account.

Hull, however, defaulted in the payment of the coupons which fell due July 1, 1892, and January 1, 1893; but in both instances the Kelleys advanced or paid the amount out of their own funds, and remitted the same to the bank as if paid by Hull, the bank placing the amount, as usual, to the credit of plaintiff's account, she supposing that the coupons had been paid by Hull. The Kelleys then placed, or caused to be placed, these two coupons in the hands of an attorney, and procured him to foreclose the mortgage, under the power, in the name of the plaintiff, and bid in the property on March 25, 1893, in the name of A. F. Kelley, for over $1,400, the full amount of principal and accrued interest due on the mortgage. The sheriff's certificate and other proofs of the foreclosure were placed on record. There being no redemption from this sale, A. F. Kelley, in November, 1894, sold and conveyed the land to the defendant Wells, for $1,750 cash, and appropriated the money to his own use. There is no evidence that Wells did not purchase and

pay his money in the honest belief that the foreclosure was authorized and valid, and that Kelley's title was good.

Neither plaintiff nor the Vermont bank knew of this pretended foreclosure, or the subsequent sale of the land to Wells, until the facts came to light, after the Kelleys failed, in the fall of 1896. The plaintiff never authorized the foreclosure, unless such authority was implied from her delivering the coupons to the bank for collection. Notwithstanding such foreclosure and sale, the Kelleys continued regularly to remit the interest, as it became due, to the Vermont bank, as if the mortgage was still a subsisting live security, and continued to do so until shortly before their failure, the last remittance being for the interest that fell due January 1, 1896. Plaintiff supposed this was being paid in the ordinary course of business by the mortgagor, Hull. Upon ascertaining the facts in the fall of 1896, the plaintiff promptly repudiated the attempted foreclosure in her name, and commenced this action to foreclose the mortgage. Wells, by way of defense, asserted the validity of the prior foreclosure, and the title founded on it, which he acquired from A. F. Kelley.

There is a mass of evidence tending to show that it was the custom of the Kelleys to advance money to pay interest on loans placed by them for others, and then foreclose the mortgages, bid the land in, in their own names, and sell it if not redeemed. But there is not a particle of evidence that plaintiff had any knowledge of such a custom, and, there being nothing in the facts making it her duty to know it, we dismiss the evidence as to the Kelleys' custom with the simple statement that it is wholly irrelevant and immaterial.

We have not overlooked the fact that the Vermont bank had, through the Kelleys, made one or two other loans for the plaintiff under similar authority, the securities for which were delivered to and retained by her, and the principal and interest as they matured collected through the bank. But there is nothing in these transactions which at all affects the present one, or at all tends to enlarge or change the authority, either express or implied, of the bank or the Kelleys in the matter now under consideration. The case is

entirely free from any element of estoppel by conduct, or of apparent, as distinguished from actual, authority, or of ratification.

The defendant Wells must stand exclusively upon the proposition that the act of the plaintiff in delivering or transmitting these interest coupons, she herself retaining the mortgage and principal note, to another, with authority to collect the same, gave such other person implied authority to foreclose the mortgage if the coupons were not paid. The learned trial judge saw clearly that this was so, and hence, in his memorandum, placed his decision squarely on the ground that, in placing the coupons in the hands of the bank for collection, she authorized it and such sub-agents as it might employ to use the usual and customary methods of enforcing payment; and, as the coupons were secured by a mortgage containing a power of sale, the foreclosure of the mortgage under the power is the usual and customary method of enforcing payment.

It is axiomatic in the law of agency that no one can become the agent of another except by the will of the principal, either express or implied from the particular circumstances; that an agent cannot create in himself an authority to do a particular act merely by its performance. It is equally axiomatic that the extent of the authority of an agent also depends upon the will of the principal, and that the latter will be bound by the acts of the former only to the extent of the authority, actual or apparent, which he has conferred upon the agent.

It is, of course, a fundamental principle in the law of agency, that every delegation of power carries with it, by implication, the authority to do all those things which are reasonably necessary and proper to carry into effect the main power conferred, and which are not forbidden. But the doctrine of implied authority goes no further than this. It is also true that where the principal confers upon his agent an authority of a kind, or empowers him to transact business of a nature, in reference to which there is a well-defined and publicly known usage, it is the presumption of the law, in the absence of anything to indicate a contrary intent, that the authority was conferred in contemplation of the usage; and therefore third persons who deal with the agent in good faith have a right to presume that the agent has been clothed with all the powers with

which, according to such usage in that particular business, similar agents are clothed. But, in order to give the usage this effect, it must be known to the principal, or have existed for such a length of time, and become so widely known, as to warrant the presumption that the principal had it in view at the time he appointed the agent.

On the facts of this case, the doctrine of implied power cannot be successfully invoked under either of these principles. If an agent to whom an interest coupon is sent for collection, while his principal retains in his own possession the collateral mortgage and principal note not yet due, has implied power to foreclose the mortgage, the sooner men know it the better. We apprehend the announcement of any such doctrine would take both the legal profession and business men by surprise. It may be that the power to collect would carry with it power to sue on the coupon. But the foreclosure of the security which the principal may have is an entirely different matter. The mortgage and the evidence of the debt are separate instruments, and afford independent remedies. The creditor may commence a personal action on the note or other evidence of the debt, or he may proceed to realize on his security; and the pursuit of one remedy is no bar to the other. The right to foreclose is not waived or impaired by the recovery of judgment upon the debt. A creditor might desire to sue on the debt, but not to foreclose his security, and vice versa. He might be willing to intrust an agent with the collection of an interest coupon, but unwilling to intrust him with the foreclosure of a collateral mortgage, which might result in sacrificing his security for the whole debt. As suggested in appellant's brief, suppose the plaintiff, instead of a mortgage on real estate, had held, as security, elevator receipts for grain, and had transmitted these interest coupons to an agent for collection, she retaining the receipts for the grain; would it be claimed that the agent would have implied authority to sell the grain? The fact that in this case the mortgage was on real property, and on record, does not alter the principle.

Whether, had the principal note been due, and been transmitted for collection, the agent would have had implied authority to foreclose, is a question not before us, and which need not now be con-

sidered. But very clearly, where an interest coupon on a principal note not yet due is sent to an agent for collection (that being the extent of his express authority), the principal retaining the principal note and collateral mortgage, the implied authority of the agent is limited to a resort to such remedies as may be pursued on the coupon, irrespective of the collateral mortgage. It may be, as suggested by the trial court, that foreclosure is the usual way of collecting debts secured by mortgage. If so, it must be because the personal pecuniary irresponsibility of the mortgagors renders it the only effective method. But that is a very different thing from holding that an agent employed merely to collect a coupon for interest on a principal note not yet due has implied authority to foreclose a mortgage which his principal holds as security for the entire debt. There is no proof of any such usage in that business, unless the practice of the Kelleys proves it. But, fortunately, the business methods of the Kelleys are not sufficient to establish a general custom or usage with reference to which other people are presumed to contract.

It is suggested that, under the registry laws, Wells is protected as a bona fide purchaser, for value, because Kelley's title appeared perfect of record. This claim might be urged with equal force if one of the deeds in the chain of title had been forged. This case illustrates the fact that our system of registration will not always protect those who purchase in reliance upon the public records. This may be partly owing to defects in the system, and in part owing to causes that are remediless under any system. The defect which was the principal cause of trouble in this case was remedied, in part at least, by Laws 1897, c. 262, which requires the authority of an attorney to foreclose a mortgage under a power to be in writing and recorded. The suggestion that the Kelleys had authority to foreclose, because the mortgage provided that it might be foreclosed by the mortgagee, her "attorney or agent," is not entitled to extended notice. If the person assuming to foreclose had no authority to do so, he was not the agent of the mortgagee for any such purpose. The defendant Wells is unfortunately the

victim of the fraud and dishonesty of the Kelleys, but this is no reason why the plaintiff should be deprived of her mortgage.

Order reversed.