GENERAL CONVENTION OF CONGREGATIONAL MINISTERS AND CHURCHES OF VERMONT v. OLE TORKELSON and Others.

July 21, 1898.

Nos. 11,132—(245).

| 73 | 401 |
|----|-----|
| d75 | 320 |
| d75 | 330 |
| f75 | 348 |
| 76 | 219 |
| 76 | 220 |
| 73 | 401 |
| 78 | 288 |
| 73 | 401 |
| 82 | 184 |

**Agents Authorized to Receive Payment of Mortgage—Evidence.**

On the evidence, *held*, a certain firm of loan agents had, as the agents of the mortgagee, actual authority, partly express and partly implied, to receive for him the amount due on a mortgage then past due, although they did not at the time have the note or mortgage, or a release of the mortgage.

**Old Mortgage Replaced by New Mortgage to Another Principal —Debit and Credit on Agents' Books—Payment of Old Mortgage.**

They also represented another principal, for whom they had money to loan, which they had deposited in their own name to their credit in the bank; and at said time they agreed to loan his money to the mortgagor, and pay the old loan out of the proceeds of the new one. In carrying out the transaction, they charged this principal on their books with the

73 M.—26

amount of the new loan, and credited the holder of the old loan with the amount due on his mortgage. *Held*, under the circumstances stated in the opinion, this constituted a payment of the old loan, although the money was never transmitted to said mortgagee.

**Entries in Agents' Books Evidence against First Mortgagee.**

*Held*, on the evidence, the trial court was warranted in finding that the agents had authority to make proper entries in their books as to the loaning transactions of said mortgagee, and the entries so made are competent evidence against him and his cestui que trust.

Action in the district court for Douglas county to foreclose a mortgage, and to have plaintiff's mortgage declared a prior lien to that of the Springfield Savings Bank. The cause was tried before Searle, J., without a jury, and judgment was ordered in favor of defendants Torkelson and the Springfield Savings Bank. From orders denying plaintiff's motions to amend the findings and for a new trial respectively, it appealed. Affirmed.

*Hahn, Belden & Hawley*, for appellant.

What the Kelleys did with reference to appellant's business is just as unimportant and immaterial in establishing the fact or extent of agency as what the Kelleys might have declared to others with reference thereto, unless and only in so far as such acts are shown to have been brought to the knowledge of appellant and to have been approved or acquiesced in by it. Lawrence v. Winona & St. P. R. Co., 15 Minn. 313 (390); Graves v. Horton, 38 Minn. 66; Bickford v. Menier, 107 N. Y. 490; Walsh v. Hartford, 73 N. Y. 5; Edwards v. Dooley, 120 N. Y. 540; Leu v. Mayer, 52 Kan. 419.

The possession of the securities, or some other showing of express authority, is indispensable evidence of an agent's right to collect the principal. Mechem, Ag. § 817; 2 Jones, Mort. 964; Smith v. Kidd, 68 N. Y. 130; Crane v. Gruenewald, 120 N. Y. 274; Cooley v. Willard, 34 Ill. 68; Doubleday v. Kress, 50 N. Y. 410; Richards v. Waller, 40 Neb. 639; Klindt v. Higgins, 95 Iowa, 529; Joy v. Vance, 104 Mich. 97; City v. Reams, 51 Neb. 225; Van Deusen v. Ingraham, 110 Mich. 38; Williams v. Walker, 2 Sandf. Ch. 325; Bronson v. Ashlock, 2 Kan. App. 255; Padley v. Neill, 134 Mo. 364; Western v. Douglass, 14 Wash. 215; Stiger v. Bent,

111 Ill. 328; Church v. Walton, 114 Mich. 677; Trull v. Hammond, 71 Minn. 172.

The transaction between Kelley and the Torkelsons by which the mortgage to the Springfield Savings Bank was taken was not a payment of plaintiff's mortgage. Trull v. Hammond, supra; Moore v. Pollock, 50 Neb. 900; Ward v. Smith, 7 Wall. 447; Robinson v. Anderson, 106 Ind. 152; Stewart v. Woodward, 50 Vt. 78; Mc-Carver v. Nealey, 1 Greene, 360; Graydon v. Patterson, 13 Iowa, 256; Budgett v. Day, 12 Cal. 139; McCulloch v. McKee, 16 Pa. St. 289; Miller v. Edmonston, 8 Blackf. 291; Underwood v. Nicholls, 17 C. B. 239. See also Kirk v. Hiatt, 2 Ind. 322; Ferguson v. Morris, 67 Ala. 389; Kenny v. Hazeltine, 6 Humph. 62; Ransom v. Alexander, 31 Tex. 443; Heyman v. Beringer, 1 Abb. N. C. 315; State v. Byrne, 97 Mich. 178; Everts v. Lawther, 165 Ill. 487.

*Keith, Evans, Thompson & Fairchild* and *C. J. Gunderson,* for respondents.

The Kelleys were authorized to receive payment of appellant's mortgages. The possession or lack of possession of the mortgage was by no means conclusive one way or the other. Security Co. v. Richardson, 33 Fed. 21. See also Thomson v. Shelton, 49 Neb. 644; Phœnix v. Walter, 51 Neb. 182; Quinn v. Dresbach, 75 Cal. 159. Of the cases where the relations between the principal and agent are similar to those existing between the Kelleys and appellant, attention is called to the following: Security Co. v. Richardson, supra; Kent v. Congdon, 33 Fed. 228; Wilcox v. Carr, 37 Fed. 130; Wilson v. La Tour, 108 Mich. 547; Ziegan v. Stricker, 110 Mich. 282; Thomson v. Shelton, supra; Phœnix v. Walter, supra.

There is no controversy with appellant over the proposition that an agent authorized to collect a debt in money must take money in payment, and cannot accept anything else. Where, however, no mode of payment is specified, the agent is at liberty to exercise his discretion, and can accept the note of the debtor or any other substitute for money. Union C. L. Ins. Co. v. Taggart, 55 Minn. 95; Tayloe v. Merchants F. Ins. Co., 9 How. 390. But even in cases where the agency is limited and the agent has authority to receive money only in payment of his principal's claim, the law will not

require any unnecessary ceremony, but will look to the ultimate result of the transaction, provided what is done is in fact equivalent to an actual receipt of money. The following authorities confirm the conclusion that the transaction in this case was payment. Hooper v. Hooper, 81 Md. 155; Hawkes v. Dodge, 11 Wis. 196; Pratt v. Foote, 9 N. Y. 463; First v. McClung, 7 Lea, 492; British v. Tibbals, 63 Iowa, 468; Howard v. Walker, 92 Tenn. 452; Scott v. Gilkey, 153 Ill. 168; Eyles v. Ellis, 4 Bing. 112; Bolton v. Richard, 6 Term R. 139; Phillips v. Mayer, 7 Cal. 82; Moore v. Norman, 52 Minn. 83; Smith v. Lamberts, 7 Grat. 138. See also Mayer v. Heidelbach, 123 N. Y. 332; Conway v. Smith (Wyo.) 46 Pac. 1084.

CANTY, J.

On May 18, 1889, the defendant Torkelson made his promissory note for $1,200, due in five years, to Henry Fairbanks, as treasurer of the Fairbanks Education Board, with interest at the rate of 7 per cent., payable semiannually according to the terms of 10 coupon notes signed by Torkelson, and attached to the principal note. To secure said note and coupons, he also made to Fairbanks a mortgage on 173 acres of land then owned by Torkelson in Douglas county, in this state. Fairbanks resided at St. Johnsbury, Vermont, and the firm of A. F. & L. E. Kelley, loan agents at Minneapolis, acted as his agents in placing the loan and collecting the interest coupons. This firm had subagents in different places in Minnesota. One of these subagents was the Bank of Evansville, at Evansville, Douglas county. Torkelson resided in that county; and when the loan came due in 1894, he applied to that bank for a new loan of $1,500, and the application was by the bank referred to the Kelleys at Minneapolis. They had another principal, the Springfield Savings Bank of Springfield, Vermont, for which they had long placed loans. They accepted the application on behalf of the Springfield Bank. Torkelson accordingly executed to that bank a new note for $1,500, dated June 1, 1894, and a mortgage on the same land to secure this note.

Prior to this time the Kelleys had received from or collected for the Springfield Bank over $15,000, which, up to June 27, 1894, was left in their hands for the purpose of being loaned, and which they

had deposited to their credit in their own name in the bank in which they kept their account in Minneapolis.  It was agreed between Torkelson and the Kelleys that the amount due on the old loan should be taken out of the new loan, and, being ready on June 27 to consummate the new loan, they charged the Springfield Bank on their books with the $1,500, credited Fairbanks with the amount so due him, to wit, $1,232.25, and remitted the balance of the $1,500 to Torkelson after deducting commissions.  They never remitted to Fairbanks the amount so due him, and never reported the same to him until after they had made an assignment for the benefit of their creditors, in September, 1896.  In the meantime they continued to pay him the interest on the loan out of their own funds, and kept putting him off with the promise that Torkelson would soon pay the principal.  During this time Fairbanks had no knowledge of the transaction by which Torkelson supposed the old loan was paid.  In January, 1897, Fairbanks, as trustee, assigned his note and mortgage to plaintiff, who, it would seem, is the real cestui que trust; and it brought this action to foreclose the mortgage.

The answer set up the defense of payment, and on the trial the court found for defendants.  From an order denying a new trial, plaintiff appeals.

Appellant contends that the evidence will not sustain the finding that its note and mortgage have been paid, for two reasons:  (1) Because the Kelleys had no authority, as agent of Fairbanks, to receive the money for him; and (2) that they did not receive any money for him.

1. At the time the new loan was made, the Kelleys did not have the Fairbanks note or mortgage, or a release of that mortgage; and appellant contends that, in the absence of these, the Kelleys had no authority to receive the money for Fairbanks.  The fact that they did not have any of these papers is, in such a case as this, a circumstance of great weight to be considered in determining the question of authority, but is not conclusive.

There was a long course of dealing between the Kelleys and Fairbanks as trustee.  They commenced loaning funds for him in April, 1878.  Prior to 1894 they had made about 18 loans for him in this

state.   Many of these loans were investments of funds collected on former loans.   In making all of these loans, the Kelleys ascertained the location and condition of the property offered as security, and passed upon the sufficiency of the title and the question of insurance.   These matters were left wholly to their judgment and discretion.   They retained the abstracts of title received by them from the borrowers, and did not forward them to Fairbanks.   The correspondence between the parties will justify a finding that Fairbanks relied wholly on the judgment and discretion of the Kelleys in making the investments.

They also collected all of the interest and principal which was paid on these loans during this time.   The principal notes and interest coupons in all of these loans were made payable at St. Johnsbury, Vermont, but all of them that were paid were collected at Minneapolis through the Kelleys.   It is true that, in nearly every instance but this where the principal note was paid, they received the note and mortgage and a satisfaction of the mortgage from Fairbanks, to be delivered at the time of payment; and, in nearly every instance in which interest was collected, they received from him the coupon to be delivered at the time of payment.   But, notwithstanding this, there is, in our opinion, evidence in the case which, taken in connection with the facts hereinbefore recited, tends to prove that these papers were sent at the time, not as authority to the Kelleys to collect, but because Fairbanks knew that, as a general rule, the borrowers would not pay without receiving the papers, and that he expected and assumed that the Kelleys would collect at the proper time, if they could, whether they had the papers or not.

On December 13, 1892, Fairbanks wrote to the Kelleys:

"I am very late in sending you coupons of Fairbanks Board notes received through you.   Will you please collect and remit avails of the following:   [Then follows description of 6 coupons, for total amount of $149.50, including one of Torkelson.]   Probably most of this money is already in your hands."

On December 23, 1893, Fairbanks wrote the Kelleys:

"Enclosed are coupons for collection Jan. 1st:   [Then follows a

list of coupons the last of which is the coupon of Williams.]    The extension of the last note has expired [evidently referring to the Williams note].    Please make it safe or collect."

In the letter of May 12, 1894, Fairbanks wrote the Kelleys:

"I have to acknowledge your two letters, * * * with remittance of $75 on acct. of principal, and $9.65 int. upon Williams note, which I enclose."

It is to be inferred from these letters that the Kelleys had neither the Williams note nor a release of the Williams mortgage when they collected the $75 of the principal of that loan.

Again, in the last letter, Fairbanks said:

"What have you done in the matter of the Torkelson note for $1,200, due May 18th, upon which I enclose coupon for $32.25? What reinvestment do you propose for this, or does he desire and do you advise extension?    Probably you will advise not loaning so much as this to one party, and I presume you can get larger interest on small loans equally safe.    Kindly keep me informed of what you do."

Again, on July 21, 1894, Fairbanks wrote:

"Probably by this time you hear from Torkelson what disposition he decides upon, and will extend if desired.    Kindly inform me what you do, and, if you have to reinvest, be quite sure of safety, and, if not very sure, divide the sum."

And on July 30, 1894, Fairbanks wrote again:

"You can arrange the Torkelson matter as you propose, and look out for a safe loan of what he pays."

It is true that the last two letters were written after the time at which Torkelson made the new loan, and claims to have paid the old one, and while the Kelleys were concealing from Fairbanks the fact that they had assumed to receive payment of the old loan.    It is also true that these two letters would not be a ratification of the acts of the Kelleys in so assuming to receive the money for Fairbanks, because he had no knowledge of these acts when he wrote the letters.    But, under all the circumstances, the trial court was warranted in construing these letters as a subsequent admission by Fairbanks of what the authority of the Kelleys had always been,

or, at least, what their authority as to the Torkelson loan was before the time at which the Kelleys had assumed to receive payment of it.

The statements and admissions in these different letters distinguish this case from the case of Trull v. Hammond, 71 Minn. 172, 73 N. W. 642. Though the present case is somewhat like the following cases, it is stronger than any of them: Ziegan v. Stricker, 110 Mich. 289, 68 N. W. 122; Phœnix v. Walter, 51 Neb. 182, 70 N. W. 938; Wilcox v. Carr, 37 Fed. 130; Kent v. Congdon, 33 Fed. 228. The present case is also much like Hare v. Bailey, infra, page 409.

Then we are of the opinion that the evidence tends to prove that the Kelleys had actual authority, partly express and partly implied, to receive the money from Torkelson in payment of the Fairbanks mortgage.

2. The next question is: Did the Kelleys, by the transaction above recited, receive $1,232.25 in payment of the Fairbanks mortgage? With regard to this point the case is the same in principle as Hare v. Bailey, supra. It appears by the correspondence that Fairbanks was in the habit of receiving the personal checks of the Kelleys in payment of the collections made by them for him. Then what is said on that point in the Hare case applies here, and we must hold that, by the transaction in question, the Kelleys received the money for Fairbanks.

3. Against plaintiff's objection and exception, a transcript of the account books of the Kelleys, so far as these books relate to each and all of the loans of Fairbanks made through the Kelleys, was received in evidence. Plaintiff waived the objection that a mere transcript or copy of the books was received, instead of the books themselves; but it is urged that the books of a third party, a stranger to the action, are not competent evidence, either under the common law or under the statute. G. S. 1894, § 5738. We shall not stop to discuss this proposition, because we cannot hold that, as to the entries in question, the books of the Kelleys are the books of strangers to the action. It is undisputed that the Kelleys had authority from Fairbanks to transact all or nearly all of the business to which these entries relate. All of the evidence in the case tends to prove that Fairbanks expected the Kelleys to keep a

record in which proper entries were made of his loaning transactions, and it is now immaterial whether that evidence was introduced before or after said transcript was received in evidence. If the Kelleys were the agents of Fairbanks, and were authorized by him to make these entries in those books, they are, as to these entries, the books of Fairbanks himself, and the books of plaintiff, for whom Fairbanks was mere trustee or agent. The fact that the books were kept in the office of the Kelleys in Minneapolis, and not in the office of Fairbanks in St. Johnsbury, is a mere circumstance to be considered with all the other circumstances of the case in determining whether the Kelleys had authority to make the entries and keep the record in question. The evidence warrants a finding that they had such authority, and that is all that it is necessary to decide on this point.

This disposes of all the questions raised having any merit, and the order appealed from is affirmed.

**Agents Authorized to Receive Payment of Mortgage—Evidence.**

