EBERT M. DEXTER and Another v. JOHN MORROW and Another.

June 1, 1899.

Nos. 11,666—(146).

| 76 | 413 |
|----|-----|
| 78 | 286 |
| 78 | 288 |
| 76 | 413 |
| 107 Wis | 415 |
| 76 | 413 |
| d82 | 164 |
| d82 | 184 |
| 82 | 186 |

**Authority of Agent to Foreclose Mortgage.**

The payee of a note secured by a real-estate mortgage sent one of the interest coupons to his agents for collection. *Held*, this did not give the agents implied authority to foreclose the mortgage.

**Finding not Warranted by Evidence.**

*Held*, further, the evidence did not warrant the court in finding that the agents had either express or implied authority to foreclose the mortgage.

Action in the district court for Kandiyohi county to foreclose a mortgage. The case was tried before Powers, J., who found in favor of defendant Robbins. From a judgment entered pursuant to the findings, plaintiffs appealed. Reversed.

*Flannery & Cooke*, for appellants.

*Samuel Porter* and *Daniel Fish*, for respondent.

CANTY, J.

This is another "Kelley case." From 1880 to 1896, A. F. & L. E. Kelley were loan agents at Minneapolis, Minnesota. During the last ten years of that time, one J. W. Dexter, residing at Newfane, Vermont, loaned his money through the Kelleys, as his agents. As such agents, they loaned $1,900 of Dexter's money to one Morrow, of Kandiyohi county, in this state, and received from Morrow his

note for that sum, dated September 15, 1892, due in three years from that date, secured by a mortgage on 160 acres of land owned by him in that county. The note and mortgage both ran to Dexter. The mortgage was recorded, and thereafter, on September 21, 1892, the note and mortgage, and an insurance policy on the building on the mortgaged premises, were sent by the Kelleys to Dexter's agent at Philadelphia, Pennsylvania. Thereafter Dexter always retained the principal note and mortgage, until he assigned them to his sons, as hereinafter stated, and the Kelleys never again had possession of them; but, at about the time each coupon note came due, it was sent to the Kelleys for collection. The coupon due in January and the one due in June, 1893, were each sent to the Kelleys for collection, but Morrow failed to pay them, and the Kelleys, out of their own funds, remitted the amount of each one to Dexter, just as they would if Morrow had paid it; and, so far as Dexter knew or was informed, the amount had been paid by Morrow.

After the Kelleys had paid the second coupon, they sent both coupons to an attorney at Willmar, in Kandiyohi county, to collect the amount of the same from Morrow. They assumed to declare the whole mortgage debt due, and instructed the attorney to foreclose the mortgage, which he proceeded to do under the power of sale therein contained. The foreclosure sale took place November 4, 1893, and the land was bid off in the name of A. F. Kelley for the sum of $2,161.85, the amount of the mortgage indebtedness, with interest and the costs of foreclosure. Though the sheriff's certificate made to A. F. Kelley recited that the sheriff had received that amount, he never received any sum except his fees. The sheriff's certificate and other foreclosure proceedings were duly recorded, and on October 29, 1894, A. F. Kelley sold and assigned the sheriff's certificate to the defendant Robbins, who paid Kelley $2,311.94 therefor, and purchased in good faith. The year to redeem expired, no redemption was made, and Robbins took possession of the land.

In the meantime the interest coupons were regularly sent by Dexter to the Kelleys for collection, and they regularly remitted the amount of each coupon to Dexter, as if it had come from Morrow. They never informed Dexter, and he never knew, that the mortgage had been foreclosed. They never remitted to him or ac-

counted to him for the proceeds of the foreclosure sale, or for the amount paid by Robbins to Kelley for the assignment of the sheriff's certificate. In February, 1896, J. W. Dexter assigned the note and mortgage to his two sons, the plaintiffs herein. A. F. Kelley drew the assignment, and, after it was executed, he recorded it. The Kelleys made an assignment for the benefit of their creditors in September, 1896, and until that time they continued to pay the interest on the Morrow loan, and kept the Dexters ignorant of the fact that the mortgage had been foreclosed. Thereafter, plaintiffs commenced this action to foreclose the mortgage, on the theory that the first foreclosure was void, because the Kelleys had no authority to institute that foreclosure. On the trial the court held that the Kelleys had such authority, that the first foreclosure is valid, and ordered judgment for defendant Robbins. From the judgment entered accordingly, plaintiffs appeal.

We are of the opinion that the evidence did not warrant the finding that the Kelleys had authority to foreclose the mortgage. Receiving the coupon interest notes for collection did not give the Kelleys implied authority to foreclose the mortgage. Burchard v. Hull, 71 Minn. 430, 74 N. W. 163; Trull v. Hammond, 71 Minn. 172, 73 N. W. 642. Prior to 1892 J. W. Dexter attended to his own correspondence and business with the Kelleys, and had up to that time sent them $8,700 of his money, which they loaned. After April, 1892, his son E. M. Dexter, one of these plaintiffs, acted as his agent, carried on his correspondence with the Kelleys from Philadelphia, and sent $8,500 more of the father's money to them, which they loaned. They made, in all, 21 loans for J. W. Dexter. The Kelleys had authority to determine the sufficiency of the title to the land proposed to be mortgaged, and the sufficiency of the security. They were intrusted with the money to be loaned, and with all the details of making the loans. But after each loan was made, and the mortgage recorded, the Kelleys invariably sent the note and mortgage to Dexter, at Newfane, or to his son, at Philadelphia, who always retained them until they were about due, and then sent them to the Kelleys for collection. Through all the course of dealing, the Kelleys, so far as appears, never collected a coupon note or a principal note before it was due, or without having possession

of the note at the time of receiving payment of it. But in two instances they received payment of an instalment of interest on a past-due note for a period subsequent to the maturity of the note, and received it at least six weeks before the end of such period. The interest was in each instance paid in connection with a request for a renewal of the loan, and these things all appeared in a letter from the Kelleys to Dexter's son and agent. The Kelleys never foreclosed any other mortgage for the Dexters. On June 22, 1894, E. M. Dexter wrote A. F. Kelley, from Philadelphia, as follows:

"Manage all in future as you have in the past regarding loans, as you think for the best. I have no disposition to question anything you do in the matter, for I know it is the best."

On February 19, 1895, he wrote:

"Manage all matters as you think best regarding our investments, and be sure of the commendation of, very truly yours."

On February 25, 1896, he again wrote:

"I wish to again assure you of my entire confidence in your endeavor to do the very best you can in managing investments we have placed with you."

It will be observed that all of these letters were written after the mortgage foreclosure sale, and all of them but one were written after A. F. Kelley had assigned the sheriff's certificate to defendant Robbins. It also appears conclusively that, at the time E. M. Dexter wrote these letters, he knew nothing of such foreclosure sale or assignment. But even if all these letters were written before the foreclosure, or the assignment of the sheriff's certificate, it could not, in our opinion, be held that they gave the Kelleys authority to foreclose this mortgage or to assign the sheriff's certificate. E. M. Dexter never had any such matters in his mind when he wrote the letters, and defendant Robbins never saw the letters, or knew that they had been written, and never relied on them, when he purchased the sheriff's certificate from Kelley. These letters are mere general expressions of confidence, which refer in a general way to the course of dealing between the parties, but not to any new or different course of dealing. This disposes of the case.

Judgment reversed, and a new trial granted.