JAMES E. WHITE v. LUKE MADIGAN and Others.

December 8, 1899.

Nos. 11,809—(117).

## Mortgage—Authority of Loan Agent to Foreclose.

In one of the so-called "Kelley" cases it is *held* that, on the evidence, the trial court would not have been warranted in finding that a foreclosure of a mortgage, wherein plaintiff was the mortgagee, made under the direction of the Kelleys, was authorized by the mortgagee, either expressly or by implication.

Action in the district court for Meeker county by plaintiff, as executor of Aaron Bisbee, deceased, to foreclose a mortgage executed by defendants Madigan and wife. The case was tried before Powers, J., who found in favor of plaintiff; and from an order denying a motion for a new trial, defendant Meeker County Bank and defendant E. B. Benson, to whom the bank had procured to be executed the quitclaim deed referred to in the opinion, appealed. Affirmed.

*Uri L. Lamprey,* for appellants.

*Woods, Kingman & Wallace,* for respondent.

COLLINS, J.

This is another of the vexatious "Kelley" cases, and, on the facts, very much like that of Dexter v. Morrow, 76 Minn. 413, 79 N. W. 394. Plaintiff mortgagee resided in Vermont, and has never been in this state. For a number of years the Kelleys had loaned money for him upon real-estate mortgage security. When notes and mortgages were duly executed, and the latter properly recorded, they were sent to plaintiff at his home, and kept in his possession. As the interest coupons became due, or as the notes matured, they were forwarded to the Kelleys for collection. In the case at bar plaintiff had forwarded the interest coupons as they became due, and the Kelleys, without collecting a dollar of the maker, remitted as if they had been paid. They also remitted as for interest after the principal note matured. The plaintiff was not informed that the interest had

not been paid, and supposed it had. He retained possession of the principal note and the mortgage.

In 1895 the Kelleys forwarded the coupons which they had paid to an agent at the county seat of the county in which the real estate in question was situate, and this agent employed attorneys to foreclose the mortgage under the power. This was done, the only authority possessed by the attorneys for the act being the coupons in their hands and the verbal instructions of the agent to foreclose. The sale was in April, 1895, and the premises were bid off in the name of A. F. Kelley for the full amount due on the note, with the costs of foreclosure. No money was actually paid to the sheriff, but he executed and acknowledged the certificate and other papers pertaining to the proceedings; and all of these were recorded. The defendant bank held a second mortgage on the premises, and within the year resolved to redeem. It did not do this directly, but, after the year of redemption had expired, procured a quitclaim deed from A. F. Kelley, paying him the full sum due. It is hardly necessary to say that the foreclosure proceedings were not known to plaintiff until after the Kelleys became insolvent, and that no part of the money paid by the bank ever reached his hands

This was an action brought to foreclose the mortgage, in which the bank was made a defendant, and wherein it defended on the ground that the foreclosure under the power was authorized and regular. The court below held to the contrary, and its decision will have to be affirmed.

The entire case rests upon the testimony of the plaintiff, taken by deposition, and the oral evidence, at the trial, of A. F. Kelley. There was no correspondence between these persons, so far as appears from the record, which would throw light on this transaction, or which would tend to indicate what were the real relations between them. There was nothing but the bare facts as hereinbefore stated. It is true that the plaintiff admitted, when testifying, that in the course of his dealings with A. F. Kelley the latter had foreclosed two mortgages for him, "but not without my knowledge and direction." And Kelley himself testified that plaintiff "relied on us to take care of his business; to do it as we would our own"; and also

that he had previously foreclosed mortgages belonging to plaintiff in the same way as was this, bidding off the property in his own name. But this was no evidence that plaintiff ever knew that Kelley bid in the property in his own name; and the fact that plaintiff relied on the Kelleys in a general way to look after his business as they would their own would not authorize the firm to foreclose a mortgage which was not in their custody, and had not been from the time it was forwarded to the mortgagee, immediately upon being recorded. See Dexter v. Morrow, supra, in which a like expression is considered. Nor did Kelley, when testifying, claim to have any authority to foreclose this particular mortgage, while the plaintiff himself positively denied that he gave any such authority, or that he knew what was being done or had been done until long after the bank obtained its quitclaim deed.

While the defendant bank has been defrauded of its money, and the loss is a hardship, there is absolutely no ground upon which to sustain its claim. The evidence is conclusive that the plaintiff kept possession of all of his securities, and simply expected the Kelleys to collect when, and not until, the papers were sent forward for that purpose. He had no knowledge, actual or to be implied, that they were doing more than this, except as they might have foreclosed mortgages, not to exceed three in fourteen years, under his special direction and authority He did not even know that the interest was not being paid by the proper party. There is no evidence at all upon which to base a claim that the Kelleys were the general agents of the plaintiff, and nobody claims that they were specially authorized to make the foreclosure.

What was said in the case of Budd v. Broen, 75 Minn. 316, 77 N. W. 979, as to the potency of the proof in that case that the mortgagee retained possession of her securities, and as to the distinction between that case and those of Hare v. Bailey, 73 Minn. 409, 76 N. W. 213, and General Convention C. M. v. Torkelson, 73 Minn. 401, 76 N. W. 215, is very pertinent, and directly in point here. Nor could authority to collect the principal be implied from the fact that the Kelleys made the loan originally. Nor could authority be implied from the fact that plaintiff forwarded the interest coupons for

collection, instead of keeping them until he received the money. Trull v. Hammond, 71 Minn. 172, 73 N. W. 642; Dwight v. Lenz, 75 Minn. 78, 77 N. W. 546. He might have been willing to intrust an agent with the collection of interest, and unwilling to place in his hands the collection of the principal note, or the custody of the collateral mortgage. Without having had in his hands at any time anything more than the coupons, and without other circumstances which might show authority, express or implied, a foreclosure by such an agent could not be upheld. Burchard v. Hull, 71 Minn. 430, 74 N. W. 163. See also Dwight v. Lenz, supra. The proof here is wholly insufficient, and a finding that the Kelleys had authority to cause the mortgage to be foreclosed would be without evidence to support it.

Order affirmed.