SPRINGFIELD SAVINGS BANK v. PETER C. KJAER and Others.[1]

January 4, 1901.

Nos. 12,326—(158).

**Payment of Mortgage—Authority of Loan Agent.**

> In an action to foreclose a mortgage, it is *held* that a finding of the trial court to the effect that an agent of the mortgagee was authorized to collect the mortgage debt, although he did not have possession of the securities, and that the mortgage was in fact paid, is sustained by the evidence.

Action in the district court for Big Stone county to foreclose a mortgage. The case was tried before Steidl, J., who found in favor of defendants. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Keith, Evans, Thompson & Fairchild,* for appellant.

*Cliff & Purcell,* for respondents.

BROWN, J.

Plaintiff is a banking corporation incorporated and doing business in the state of Vermont. During a number of years prior to 1896 it loaned large sums of money upon real-estate mortgage security in this state through its agents, A. F. & L. E. Kelley. In 1892 the Kelleys loaned for plaintiff the sum of $900 to one P. C. Kjaer, which was secured by a mortgage upon real property owned by him, and situated in Big Stone county. The mortgage

1 Reported in 84 N. W. 752.

became due in 1897,—five years from its date. Kjaer defaulted in the payment of the interest, and the Kelleys caused the mortgage to be foreclosed in 1895, becoming the purchasers at the sale. The Kelleys did not have possession of the mortgage or note at the time of such foreclosure, nor were they expressly authorized to foreclose the mortgage. Within the year for redemption, defendant Bank of Ortonville, a subsequent mortgagee, duly redeemed from the sale, paying to the sheriff the amount necessary for that purpose, who remitted it to the Kelleys. On the claim that such foreclosure was wholly unauthorized and consequently void, plaintiff brought this action to foreclose the mortgage. Defendants had judgment in the court below, and plaintiff appeals from an order denying a new trial.

The only question presented by the assignments of error is whether the findings of fact are sustained by the evidence. The findings are challenged in two particulars, which present the principal questions in this case, namely: (1) Whether the Kelleys had authority to foreclose the mortgage; and (2) whether they had authority to collect plaintiff's loans before they became due.

In the view we take of the case, it is not of controlling importance whether they had authority to foreclose the mortgage. Even if they had no such authority, but did have authority to collect mortgage loans before they became due, and without the securities in their hands, their authority as to the foreclosure of such mortgages is immaterial; for they in fact received the money in payment of this mortgage, and credited it to the plaintiff's account on their books, as they did in all cases where collections. were made. If they received the money in payment of the mortgage,—and there is no question but that they did,—and had authority to so receive it, it is immaterial by what means it came into their hands. It would not do to hold that a payment to an authorized agent, which is forced and made necessary by proceedings on the part of the agent wholly unauthorized by his principal, is a nullity, simply because of the unauthorized means resorted to by the agent to compel the payment. Having authority to receive the payment, the situation is precisely the same as though

it had been received by plaintiff's cashier at its banking house in Vermont.

But we are of opinion that there is evidence in the record reasonably tending to support the finding as to the Kelleys' authority in this respect, as well as with reference to their authority to collect plaintiff's loans both before and after they became due. In reaching this conclusion we have been guided by the familiar rule that if there is any evidence reasonably tending to support the findings they must be sustained, and that such findings should be set aside on appeal only when the evidence is clearly and palpably against the conclusions reached by the trial court.

The facts, in addition to what we have already stated, as disclosed by the findings and evidence, are substantially as follows: For a period of about fifteen years prior to 1896, plaintiff carried on, through the Kelleys, as its agents and representatives, a very extensive business of loaning money upon farm mortgages in this state. At about the date of the mortgage in question the Kelleys, as such agents, had negotiated for plaintiff loans aggregating in the neighborhood of $135,000. The Kelleys had full and unlimited authority with respect to making the loans. They received all applications, and exercised their judgment and discretion in determining whether to grant them. Plaintiff's money was on deposit with them, and when a loan was made they charged plaintiff's account therewith, and forwarded the securities to plaintiff, retaining in their own possession abstracts of title and all applications and other papers pertaining to the transactions. They had sole charge of the matter of taxes, insurance, and collections, and, in short, had the full control and management of plaintiff's interests in this state, in so far as related to such loans and the collection thereof.

Their authority to foreclose mortgages without special instruction is denied by plaintiff, and it is also denied that they had authority to collect loans before they became due. However, it is not disputed but that they made all collections on due and past-due loans, and had full authority to do so from plaintiff. Nor is it denied but that they frequently collected principal and interest

without at the time having the securities in their possession, and this with the knowledge and permission of plaintiff. And it appears from the evidence that the Kelleys collected such loans, principal and interest, before the principal became due, and when the securities and papers were still in the possession of plaintiff; and at least one instance of this kind was reported to plaintiff, and no objection appears to have been made to it. Kelley testified that he was in the habit of so collecting such loans, and in some instances reported the same to plaintiff, and in some instances did not report until the loan became due. The court below found the facts accordingly. The testimony of Kelley in this respect is not disputed. The Kelleys adopted the usual methods for enforcing collections where debtors were in default. They foreclosed the mortgages securing the loans.

Although there is no evidence of express authority to so foreclose, the evidence does not show that such authority was expressly withheld from them. The plaintiff undoubtedly knew that in all probability, in view of the large volume of business being conducted here, foreclosures would become necessary, to protect the rights of the bank, but the record before us does not show express authority in the Kelleys to so proceed. The plaintiff well understood, however, that for some reason or by some means changes were being made in their mortgages, and that, too, at a time when the bank had the actual custody of the securities. The evidence does not show upon what this knowledge was founded,—whether upon information that mortgages were being foreclosed when the Kelleys did not have the securities, or from a knowledge that so large a business could not well be conducted without frequent changes taking place by that or other means. But that the bank had notice that changes of some kind were being made is conclusively shown by a letter written by its treasurer to the Kelleys of date April 21, 1893, as follows: "If other changes have been made in any of my loans, please report at early convenience." Moneys collected by the Kelleys were deposited in banks to their own credit,—plaintiff given credit therefor on their books,—and the same reloaned by them without consultation with plaintiff;

the report of the collection and the credit on their books being, as a rule, all the information that was conveyed to plaintiff. This course of dealing was well known and understood by plaintiff, and was fully authorized. There is no suggestion in the record that plaintiff ever had any direct communication or dealing with any of the persons to whom the Kelleys so loaned its money, either with reference to loaning or collecting the loans when due. The plaintiff relied wholly upon the Kelleys.

In no so-called "Kelley case" heretofore presented to the court does the evidence tend so strongly towards showing a general agency on the part of the Kelleys as in the case at bar. It is materially stronger than in Hare v. Bailey, 73 Minn. 409, 76 N. W. 213, and General Convention C. M. v. Torkelson, 73 Minn. 401, 76 N. W. 215. In the case of Dexter v. Morrow, 76 Minn. 413, 79 N. W. 394, it did not appear, as it does in this case, that the Kelleys were in the habit, with the knowledge and acquiescence of the mortgagee, of collecting loans made by them without having the securities in their possession, and, at least in one instance, before maturity. Nor did such fact appear in the case of Burchard v. Hull, 71 Minn. 430, 74 N. W. 163, nor in White v. Madigan, 78 Minn. 286, 80 N. W. 1125. The importance of that fact is pointed out in Budd v. Broen, 75 Minn. 316, 77 N. W. 979. It did not so appear from the evidence in the case of Thomas v. Swanke, 75 Minn. 326, 77 N. W. 981, nor in Trull v. Hammond, 71 Minn. 172, 73 N. W. 642. Though, in most of the so-called "Kelley cases" heretofore presented to us, it clearly appeared from the evidence that it was the custom and habit of the Kelleys to collect loans made by them without the securities and papers in their possession, such custom and habit was not in any of such cases shown to have been known to and permitted by the mortgagee, as in this case. Here it is conceded that such was the custom of the Kelleys, and plaintiff knowingly permitted it to continue. And it is not disputed but that in this case the custom extended, as a matter of fact, to the collection of such loans before maturity. At least, plaintiff admits notice of one instance of the kind; and the testimony of Kelley that such was their custom, and that in

instances of such collections they notified plaintiff thereof, is not denied by any of the officers of plaintiff.

It is, however, contended by counsel that this custom was unknown to plaintiff, and that the one instance which did come to their notice was not sufficient to charge plaintiff with notice of the custom. It was said in Smith v. Fletcher, 75 Minn., at page 192, 71 N. W. 800, 801, that an instance of the same character in that case was an item of evidence tending to show authority in the Kelleys to so collect, but was not conclusive. It is an item of evidence in this case to the same end, and tends also to corroborate the testimony of Kelley that such was their general custom. This case is very similar to Ziegan v. Stricker, 110 Mich. 282, 68 N. W. 122, and Dexter v. Berge, 76 Minn. 216, 78 N. W. 1111, in so far as authority to collect is concerned. And authority to collect must, in the nature of things, in a measure, at least, include and embrace authority to resort to the ordinary and usual methods of enforcing payment. In none of the cases cited by appellant did this court attempt to determine the facts with respect to the extent of the authority of the Kelleys, but simply determined whether the findings of the trial court were sufficiently sustained by the evidence. Nor do we determine in the case at bar the ultimate fact as to their authority. It is not our province to do so. A finding of authority to collect loans was sustained in Randall v. Eichhorn, 80 Minn. 344, 83 N. W. 154, upon less evidence than is found in this record.

Our conclusion, therefore, based upon a careful consideration of all prior decisions of this court in similar cases, and upon a painstaking examination of the record before us, is that the findings of the learned trial court should be sustained. The evidence reasonably tends to support them, and is not so clearly and palpably the other way as to justify a reversal of the order appealed from.

Order affirmed.

LEWIS, J. (dissenting).

I find no substantial evidence in the record to the effect that appellant either expressly or impliedly authorized the Kelleys to collect their notes before maturity. Kelley's testimony to that

effect is of a general, rambling character, and he does not support his statement with a single instance. The force and credibility of Kelley's testimony has been well characterized by Justice MITCHELL, in a similar case (Smith v. Fletcher, 75 Minn. 189, 77 N. W. 800), in the following language, at page 192: "As usual, his testimony was all in the air, indefinite and evasive, consisting principally of mere conclusions, inferences, and 'understandings,' which, when analyzed, are found to be supported by a very small foundation of fact." By a microscopic examination of Kelley's books upon the trial, one single instance was found when a note had been collected before maturity, and that had been reported to appellant, and there is no evidence to show that such collection had not been made by express authority.

In this case appellant had sent the interest coupons on to the Kelleys for collection, and they sent back the money called for, and falsely reported them paid. The principal note and mortgage were not due, and would not mature for two or three years, and were in the possession of appellant. For the purpose of deceiving appellant, the Kelleys reported payment, and then foreclosed the mortgage, keeping appellant in the dark. From the fact that the Kelleys had been permitted to collect past-due paper, although they did not have the notes in their possession, no implication arises extending their authority to collect paper not yet due. For a full discussion of the question of apparent and implied authority in such cases, I refer to the case of Burchard v. Hull, 71 Minn. 430, 74 N. W. 163, and I consider the present case within the principles there defined. This case is, in my judgment, controlled by Dexter v. Morrow, 76 Minn. 413, 79 N. W. 394. If there was no authority, express or implied, to collect mortgage notes before maturity, then it follows that the payment made by the sheriff to the Kelleys was not a payment to appellant, because appellant never received the benefit of it. For these reasons, I dissent.