JAMES H. HARE v. ELLA M. BAILEY.

July 21, 1898.

Nos. 11,166—(237).

**Agents Authorized to Receive Payment of Mortgage—Evidence.**

On the evidence, *held*, that defendant's agents had actual authority, partly express and partly implied, to receive for her the amount due on a mortgage loan which she had made, even though they did not at the time have the note or the mortgage or a release of the same.

**Old Mortgage Replaced by New Mortgage to Another Principal—Debit and Credit on Agents' Books—Payment of Old Mortgage.**

The agents also represented D., another principal, for whom they loaned money, and they then had in their hands $2,000 of his money to loan, which they had in their own name deposited in their bank to their credit. When defendant's mortgage came due, they agreed to loan the mortgagor $1,100 of D.'s money, take a new mortgage on the same land, and apply the money in payment of defendant's mortgage. In carrying out the transaction, they merely gave defendant credit on their books for $1,100, and charged the same amount on their books to D. They had authority to deposit defendant's money in their own name. *Held*, the

transaction amounted to a payment of defendant, although the agents never transmitted the money to her.

**Authority of Agents—Evidence of Insolvency Incompetent.**

Evidence that the agents were then insolvent *held* incompetent to prove that they did not have authority from defendant to do as they did.

Action in the district court for Hennepin county to restrain the foreclosure of a real-estate mortgage, and to cancel the same. The cause was tried before Russell, J., without a jury, and judgment in favor of plaintiff was ordered. From an order, McGee, J., denying defendant's motion for a new trial, she appealed. Affirmed.

*Bodge & Gould*, for appellant.

The Kelleys had no authority to receive payment of the mortgage in question at the time the attempted payment was made. In the absence of express or implied authority, the mortgage securities are the indispensable evidence of authority to collect the principal thereof, and the person dealing with the party assuming to act as agent for collection is bound to inform himself as to whether such agent has the securities. 1 Pingrey, Mort. § 1145; Haines v. Pohlmann, 25 N. J. Eq. 179; Smith v. Kidd, 68 N. Y. 130; Mechem, Ag. § 373; Brewster v. Carnes, 103 N. Y. 556; Security v. Graybeal, 85 Iowa, 543; Story, Ag. § 99. The firm of A. F. & L. E. Kelley had no implied authority to collect this mortgage on January 3, 1896. Trull v. Hammond, 71 Minn. 172; Burchard v. Hull, 71 Minn. 430; Joy v. Vance, 104 Mich. 97; Security v. Graybeal, supra; Story, Ag. supra; Smith v. Kidd, supra; Church v. Walton, 114 Mich. 677; City v. Reams, 51 Neb. 225; U. S. v. Burson, 90 Iowa, 191; 1 Jones, Mort. § 964; Cooley v. Willard, 34 Ill. 68; Williams v. Walker, 2 Sandf. Ch. 325; Padley v. Neill, 134 Mo. 364.

There was no payment of the mortgage in question in law or in fact. The payment of the mortgage was not in money or its equivalent. Trull v. Hammond, supra; Moore v. Pollock, 50 Neb. 900; U. S. v. Burson, supra; Security v. Graybeal, supra; Aultman v. Lee, 43 Iowa, 404; Drain v. Doggett, 41 Iowa, 682; McCormick v. Keith, 8 Neb. 142; Everts v. Lawther, 165 Ill. 487; Price v. White, 70 Ga. 381; Todd v. Reid, 6 E. C. L. 455; Scott v. Irving, 1 B. & A.

605; Ward v. Smith, 7 Wall. 447; McCormick v. Breen, 61 Ill. App. 528; Lane v. Duchac, 73 Wis. 646; Davis v. Smith, 29 Minn. 201.

*Fred. W. Reed* and *E. F. Waite,* for respondent.

The Kelleys had authority to collect the mortgage debt. As general agents, the Kelleys had the right to collect mortgage debts at maturity, without possession of the securities, if the debtors were willing to pay under such circumstances. Ziegan v. Stricker, 110 Mich. 282; Noble v. Nugent, 89 Ill. 522; Stevens v. Meers, 11 Ill. App. 138; Shane v. Palmer, 43 Kan. 481; Security Co. v Richardson, 33 Fed. 16.

Where agency is disputed, and is to be determined from conflicting evidence as to details relied upon to establish and characterize it, the question is one of fact both as to its existence and scope. Mechem, Ag. § 106; South v. Henlein, 52 Ala. 606; Morrison v. Whiteside, 17 Md. 452; Welstead v. Levy, 1 Mood. & R. 138; Krebs v. O'Grady, 23 Ala. 726; McClung v. Spotswood, 19 Ala. 165; London v. Hagerstown, 36 Pa. St. 498; Hart v. Borough, 56 Pa. St. 23; Reid v. Kellogg, 8 S. D. 596. The fact that the securities were not in Kelley's possession, considered in its most adverse light, merely puts respondent to the proof of authority, express or implied. Richards v. Waller, 49 Neb. 639; Thomson v. Shelton, 49 Neb. 644. See also Wheeler v. Benton, 67 Minn. 293; Noble v. Nugent, supra; City v. Reams, 51 Neb. 225; Reid v. Kellogg, supra; Kasson v. Noltner, 43 Wis. 646; Quinn v. Dresbach, 75 Cal. 159; Shane v. Palmer, supra; Security Co. v. Richardson, supra; Bronson v. Chappell, 12 Wall. 681; Dunn v. Hornbeck, 72 N. Y. 80. Appellant ought not to be permitted to question this agency or its scope. She is responsible for the situation, and is bound, whether by authorization, ratification or estoppel. Columbia Mill Co. v. Nat. Bank of Commerce, 52 Minn. 224; Dimond v. Manheim, 61 Minn. 178; Turner v. Kennedy, 57 Minn. 104; Story, Ag. § 470; Burgess v. Bragraw, 49 Minn. 462.

The transaction shows a payment of the Bailey mortgage. We do not question the general rule that authority to collect does not in itself authorize payment except in money. On analysis the rule may be stated thus: (1) Payment to an agent must be in money

unless otherwise authorized. (2) Naked authority to collect does not in itself authorize payment in anything but cash, or what by usage is its equivalent. (3) But the authority to collect may be so enlarged, expressly or by implication from the nature of the business or the course of dealing between the parties, that a collection in money may be made without passing the cash or its equivalent. Kelley had the money, and, if he consented to apply it on Bailey's note, that was a payment. Bausman v. Faue, 45 Minn. 412; Eyles v. Ellis, 4 Bing. 112; Pratt v. Foote, 9 N. Y. 463; Mayer v. Heidelbach, 123 N. Y. 332; First v. McClung, 7 Lea, 492; Nightingale v. Bank, 26 U. C. C. P. 74; Hooper v. Hooper, 81 Md. 155; Osborn v. Baird, 45 Wis. 189; Conway v. Smith, 46 Pac. 1084; Howard v. Walker, 92 Tenn. 452; Scott v. Gilkey, 153 Ill. 168; Hawkes v. Dodge, 11 Wis. 196; British v. Tibballs, 63 Iowa, 468; Bolton v. Richard, 6 Dunn & E. 139; Phillips v. Mayer, 7 Cal. 82; Smith v. Lamberts, 7 Grat. 138; Moore v. Norman, 52 Minn. 83.

CANTY, J.

This case is another illustration of the system of frauds practiced by the firm of A. F. & L. E. Kelley, former loan agents at Minneapolis.

During all the times hereinafter mentioned, plaintiff was, and still is, the owner of a certain city lot in Minneapolis. On January 3, 1893, he procured a loan of $1,100 from defendant, and executed to her therefor his promissory note, due in three years, with interest at the rate of 7 per cent. per annum, payable semiannually according to the terms of six coupon notes attached to the principal note, and signed by him. He also executed to her a mortgage on said lot to secure the payment of the note. Defendant has always lived at Montpelier, Vermont, and the Kelleys acted as her agent in making the loan. After the mortgage was recorded, the papers were sent to her in Vermont, and she always retained them until about the time the loan was due, except that she sent each coupon note to the Kelleys for collection about the time it came due, and they collected the amount, and remitted it to her.

About 15 days before the principal of the loan came due, the Kelleys notified plaintiff that defendant wanted it paid at maturity;

and thereupon, a few days before it came due, plaintiff applied to the Kelleys for a new loan with which to pay off the old one. Thereupon the Kelleys informed him that they had the money of one Dean to loan, and would replace the loan with the latter money. Pursuant thereto, on January 3, 1896, plaintiff made his note to Dean for $1,100, due in three years, and secured it by a mortgage on the lot.   He also paid the Kelleys the last instalment of interest due defendant, and also their commission for making the new loan. As a part of this transaction it was agreed between plaintiff and the Kelleys that Dean's money should be applied by them to pay the balance due defendant.   The Kelleys did not at this time have the note or mortgage executed by plaintiff to defendant, or any satisfaction of that mortgage.   Plaintiff at the time asked for these papers, and was told by A. F. Kelley that they were in the possession of defendant, at Montpelier, and that he would send and get them.   On January 9, 1896, he did send for them, inclosing in his letter a form of satisfaction of her mortgage for defendant to sign; and on or before February 9, 1896, the Kelleys received from defendant her note and mortgage and the satisfaction duly executed by her, but they never delivered any of these papers to plaintiff.

Prior to the time the note and mortgage to Dean was executed, he placed in the hands of the Kelleys $2,000 of his money, to be loaned by them as his agent; and they had deposited it in their own name in the bank, in an account in which they had to their credit in the bank at said time the sum of $30,000.   On the execution of the note and mortgage to Dean, they charged him on their books with $1,100, and credited this sum to defendant; but they never remitted this money to defendant, and never remitted to her the amount of the last coupon note paid to them in cash by plaintiff.

Some time after the Kelleys received the note, mortgage and satisfaction from defendant, they made an assignment for the benefit of their creditors.   Thereafter defendant commenced proceedings to foreclose her mortgage under the power of sale therein contained, and plaintiff brought this action to have the foreclosure enjoined, and to have the mortgage declared paid and satisfied. On the trial the court found for plaintiff, and, from an order denying a new trial, defendant appeals.

The questions to be determined are (1) whether the Kelleys had authority, as agents of defendant, to receive from plaintiff the sum due on her mortgage; and (2) whether, by the transaction above stated, they did so receive for her the principal sum so due.

1. We are of the opinion that the Kelleys did have such authority. There was a long course of dealing between them and defendant. For some years prior to 1888 her father's estate was administered by one Mason, and he, as such administrator, loaned the money of the estate through the Kelleys as his agents. Commencing in the latter part of 1888, he at different times distributed the estate in instalments between defendant, her sister and her mother, who continued thereafter to loan their money through the Kelleys as their agents. On December 29, 1890, the Kelleys wrote to defendant complaining that Mason, who was then dead, had in his lifetime turned over to her and her mother certain notes and mortgages without making any written assignment of the mortgages, so that satisfactions of the mortgages, which the mortgagees would accept, could not be obtained. The letter stated that they (the Kelleys) had received payment of these mortgages, and given their receipts for the money, and surrendered the note and mortgage in each case. A way was suggested by which acceptable satisfactions might be obtained.

In September, 1893, defendant appointed one Lowe, her brother-in-law, as her agent to look after and manage these loans for her. Lowe resided at Montpelier also, and had considerable correspondence with the Kelleys in regard to these loans. On October 13, 1894, the Kelleys wrote Lowe:

"Enclosed find New York draft $527.40, in payment of Olson note and interest, due Ella M. Bailey; also release for her to execute."

On January 9, 1896, they wrote Lowe:

"Herewith we hand you check for $521, in payment of the $500 instalment of the Forman B. Smith mortgage, in favor of Ella M. Bailey, which matured on May 31st last, together with interest on same to date. Also N. Y. draft $324.50, $300 of which is on account of the $700 instalment still due on above mortgage, with interest to Jan. 1, 1896, $24.50."

A. F. Kelley testified that he frequently collected these loans when he did not have the papers; that, when parties came in to pay he took the money, and then sent for the papers and the release. He also testified that he often collected defendant's interest coupons when he did not have them, and that, after collecting he would send for the coupons. The Kelleys paid defendant interest on her money when it remained uninvested in their hands.

The trial court was warranted in finding from the correspondence between the parties that defendant had notice of all these facts. The principal received on all or nearly all of the loans which came due prior to the latter part of 1893 was retained by the Kelleys, and reinvested by them for defendant. They collected all her loans which were paid before they made the assignment, and whenever a loan came due, and the borrower was ready to pay, they made out a form of release and sent it to her to execute, which she always did. The correspondence tends to prove that they did about as they saw fit in all these matters, and made such loans as they saw fit, except that she wanted her money loaned on city property, and that she had implicit confidence in them. The long course of dealing between the parties tends to prove that the Kelleys had implied authority from defendant to receive from plaintiff the money in question. See 1 Am. & Eng. Enc. (2d Ed.) 1002.

But there was also evidence tending to prove express authority. Kelley further testified that in 1893 Lowe came to Minneapolis, and informed him that defendant would want the loans paid as they matured. Lowe testified that he had told Kelley that he did not believe defendant would consent to renew or reloan any money. The trial court had a right to believe either of these statements. The Kelleys, writing to Lowe on December 3, 1895, after speaking of another mortgage, say:

"Your other past-due mortgages, we will make every effort possible to have them completed and in proper shape by January 1st."

On the same date (December 3d), Lowe, writing to the Kelleys, says:

"What about loans past due, and with you for collection? Have you succeeded in collecting any, and what are the prospects?"

It does not appear that the Kelleys had in their hands at that time the papers or a release of the mortgage in all of the loans then past due.

True, the loan to plaintiff was not then due.    It fell due a month later, January 3, 1896.  But, taking their correspondence in connection with the other testimony, the trial court was warranted in finding that the Kelleys had express general authority from Lowe to collect all of these loans as fast as they would fall due, regardless of whether the Kelleys had in their hands releases to be delivered on payment, and that their authority was not, as appellant contends, limited by the condition that they should have in their possession the papers, including a release of the mortgage.   Then, we are of the opinion that the evidence tends to prove that the Kelleys had actual authority, partly express and partly implied, to collect this loan on January 3, 1896, even though they did not then have the papers or a release of the mortgage in their possession.

2. Appellant further contends that by the transaction above recited, by which the Kelleys merely made a transfer of a credit on their books from Dean to defendant, they did not receive any money as defendant's agents, and plaintiff did not pay them any as such agents; that no money actually passed; and it cannot be held that this mere matter of bookkeeping paid defendant's mortgage. The evidence will warrant a finding that defendant knew that the Kelleys made a practice of depositing her funds in their own name in their account in the bank, because the correspondence shows that they had often paid her with checks drawn on such an account in their bank.   And, in our opinion, the case is the same as if the Kelleys had drawn $1,100 out of the deposit to their credit in the bank, and had said to plaintiff, "This is the money which Dean has lent to you, and with which we will pay Miss Bailey," and had then redeposited it in the bank just as it had been deposited before it was drawn out.   But this idle ceremony of drawing the money out of their account, and redepositing it in the same account, could add nothing to the binding character of the transaction.   In our opinion the transaction amounted to a payment of the money to defendant.

3. The court did not err in refusing to permit defendant to prove that the Kelleys were in fact insolvent at the time of said transaction. Neither plaintiff nor Dean knew that fact; and, if the Kelleys had authority to do business in the manner they did, that fact would not, under the circumstances, deprive them of that authority.

The order appealed from is affirmed.