HARRIET L. C. BUDD v. TOLLEF E. BROEN and Another.

January 23, 1899.

Nos. 11,333—(205).

### Authority of Agent to Receive Payment of Mortgage.

If a mortgagor pay his mortgage debt to a supposed agent of the mortgagee without the production by the agent of the note and mortgage, he assumes the risk of establishing, in case of the denial of such agency, the authority of the agent to receive such payment for the mortgagee.

### Finding not Sustained by Evidence—Hare v. Bailey and General Convention C. M. v. Torkelson Distinguished.

The evidence in this case does not sustain the finding that the plaintiff's loan agents had authority to receive for her payment of a note and mortgage then in her exclusive possession. Hare v. Bailey, 73 Minn. 409, and General Convention C. M. v. Torkelson, 73 Minn. 401, distinguished.

Action in the district court for Otter Tail county to foreclose a mortgage to secure the payment of $200. The defendants pleaded payment and prayed that the mortgage be discharged and satisfied of record. The cause was tried before Baxter, J., without a jury, who ordered judgment in favor of defendants. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Clark & Wingate*, for appellant.

*E. E. Corliss*, for respondents.

START, C. J.

The defendant Tollef E. Broen, on April 11, 1891, made his note for $200, due in five years, with annual interest according to coupons attached, to Cecil H. C. Howard, and gave to him a real-estate mortgage to secure its payment. This note and mortgage were assigned to the plaintiff, and she brought this action to foreclose the mortgage.

The defense was payment in full of the mortgage debt. The trial court found that the defendant paid the note and mortgage on or about April 11, 1896, to A. F. & L. E. Kelley, who were then the general agents of the plaintiff for the collection thereof, and authorized to receive such payment for her. Is this finding sustained by the evidence? This is the only question in this case.

The plaintiff claims that any authority which the Kelleys had as to loans made by them for her does not apply to this particular mortgage, because they did not make the loan for her, but for Howard, who assigned it to her; and, further, that the mortgage was paid one day before it was due. The evidence does not justify either of these claims.

It is an admitted fact that the defendant, on April 10, 1896, paid to a local agent of the Kelleys at Fergus Falls the amount of the mortgage debt, who forwarded to them his check for the amount thereof, which reached them on the next day. They deposited the check in bank to their own credit, and credited the plaintiff with the amount on their books, but they never paid the money to the plaintiff.

When the assignment of the mortgage was made to the plaintiff, the note and mortgage were delivered to her, and continuously remained in her possession until the commencement of this action. At or about the times the interest matured, she forwarded the coupons to the Kelleys for collection, who sent them to their local agent, to whom the defendant paid them, and received the coupons on such payment. It is also true that for 13 years next before the making of this payment the Kelleys acted as loan agents of the

plaintiff, during which time they made some 30 or 40 loans for her. They passed upon the title, collected the interest and principal of the loans, reinvesting the same for her when so directed. When they made collections, either of interest or principal, it was their custom to deposit the money in bank to their own credit, and send the plaintiff their check therefor.

The evidence is ample to justify the conclusion that the plaintiff sanctioned this method of conducting the business of the plaintiff, but the evidence is also practically undisputed that whenever a loan was made the note and mortgage were sent to the plaintiff, who resided in New York City, and were there retained by her in her exclusive possession. As the coupons matured, they were sent to the Kelleys for collection, and at or about the time the principal became due she wrote to the Kelleys to ascertain if the mortgagors wished to pay, and, if so, she forwarded the note and mortgage in each case for collection, with directions as to the disposal of the fund collected.

The plaintiff concedes that the Kelleys were her agents to make loans for her, and to collect them from time to time as she sent to them the coupons, notes and mortgages for that purpose, and not otherwise; and she so testified on the trial.

The claim of the defendant is that the Kelleys were the general agents of the plaintiff to collect her loans for her, whether the papers evidencing the loans were in their possession or not. If there is any evidence in the record to sustain the contention of the defendant, it is to be found in the testimony of A. F. Kelley, who testified, in general terms, that it was agreed between his firm and the plaintiff that they would collect all interest and principal of the loan made by them for her free of charge to her, and that she should receive 8 per cent. per annum net for her money, and that they paid interest on her money in their hands before investment; and, further, that they did so collect the principal and interest of her loans. But he gave no testimony tending to show that his firm ever, to the knowledge of the plaintiff, collected interest or principal on the loans unless the coupon, note or mortgage was in their possession, or that they were authorized so to do.

In connection with this witness' testimony, 73 letters from the

plaintiff to the Kelleys were received in evidence without objection. This correspondence tends directly to support the claim of the plaintiff that it was only as she forwarded her coupons, notes and mortgages for collection that the Kelleys were authorized to collect her loans. Among these letters was one dated August 5, 1895, in which the plaintiff said:

"I wrote you from Wilton sending release of mortgage, and asking, if I signed the Jenc release, if it could be paid without sending papers until I returned to New York in September."

This is the only letter of the 73 to which counsel for defendant calls attention as indicating that the Kelleys were authorized to collect her loans without her first sending the papers to them. The natural inference to be drawn from the language of this letter is that the plaintiff, being away from home, did not have her papers with her, and could not send them until her return to her home; but as a substitute for them she sends a release of the mortgage, and asks if the loan can be paid without the papers. This implies that it was her custom to send the papers before collections were made, and that it was her understanding that it was necessary so to do.

It appears from the testimony that as a matter of fact the Kelleys did collect the principal of several of the plaintiff's mortgages without having them in their possession, but the evidence is conclusive that the plaintiff did not learn of these collections until long after the one in question was made. The Kelleys did not report such collections to the plaintiff.

It is apparent that there was no material conflict in the evidence, for, while Kelley testified that he was to collect the principal and interest of the loans without charge to the plaintiff, he did not testify that he was authorized to make such collections under any other conditions except as testified by the plaintiff; that is, as she sent the papers to him for collection in each case.

The fact that the plaintiff retained the note and mortgage in her possession is an important circumstance in this case, and the defendant, having made the payment without requiring the securities to be produced and surrendered, must establish affirmatively the authority of the agents to receive such payment. The fact that the

Kelleys were accustomed for many years to collect the principal of plaintiff's mortgages, on being intrusted with the securities in each individual case, does not warrant a finding of general authority to collect the principal of all of her mortgages which they had taken for her without having possession of them. Trull v. Hammond, 71 Minn. 172, 73 N. W. 642.

The fact that she did not leave the securities with her loan agents, but retained them in her exclusive possession, is very potent evidence that she did not intend to confer upon them such general authority. By so retaining her securities, and sending them for collection only as they became due, she could keep a wholesome check upon her agents, and avoid the possibility of loss through them, except as to the particular securities sent for collection. If, in such cases, the money was not remitted or the papers returned within a reasonable time, she could investigate, and at once learn whether her agents were in default. But if she conferred general authority upon them to collect the principal of any or all of her loans without first receiving the securities, she would hazard the whole of them, for she would then have no check upon her agents, or means of knowing when or what payments were made.

The defendant, having paid his note and mortgage to the Kelleys without requiring a surrender of the securities, assumed the risk of establishing the authority, express or implied, of the agents to receive such payment for the plaintiff. We are unable to find in the record any evidence that justifies the finding that the agents were so authorized. Their authority was to receive payment for the plaintiff whenever she forwarded her securities for collection, and there is no evidence warranting the conclusion that she ever knew that the Kelleys ever assumed to collect the principal of her mortgages without having first actually received them from her; hence there is no evidence of ratification of their acts, or of actual implied authority to receive payment of the note and mortgage in question.

And right here is the distinction between this case and the cases of Hare v. Bailey, 73 Minn. 409, 76 N. W. 213, and General Convention C. M. v. Torkelson, 73 Minn. 401, relied on by the defendant. In each of the latter cases there was evidence showing that the custom of the Kelleys to collect loans which they had made without

having the securities in their possession was brought home to the mortgagee, and no objections were made to their conduct in so dealing with the loans; therefore it was held that the evidence was sufficient to warrant the conclusion that the mortgagee recognized and admitted the existence and authority of the loan agents to collect the mortgage, although it was not in their possession. There is no such evidence in this case, and the finding here in question is not sustained by the evidence.

Order reversed, and a new trial granted.