ULEN v. KNECTTLE

(No. 1944; June 9, 1936; 58 Pac. (2d) 446)

For the plaintiff in error, there was a brief by *Durham & Bacheller* of Casper, and oral argument by *Mr. H. B. Durham*.

For the defendant in error, there was a brief and an oral argument by *A. H. Maxwell* of Lander.

BLUME, Justice.

This is an action brought by Charles J. Knecttle, as plaintiff, against Theresa S. Ulen, defendant, to enjoin the latter from foreclosing a mortgage on lands in Fremont County, Wyoming, given by the plaintiff on April 1, 1924, securing a note of even date in the principal sum of $1000, with ten per cent interest per annum, claiming that the indebtedness was duly paid on September 28, 1926, to J. W. Stuchel, defendant's duly authorized agent to collect the money. Judgment was entered in favor of plaintiff as prayed, and the defendant has appealed. The parties herein will be referred to as in the court below, or by name. The term "agent" used herein generally refers to one purporting to act for another, but ordinarily must not be under-

stood as implying that he had authority in the particular matter under discussion unless the contrary is indicated.

The only two witnesses in the case were the plaintiff and J. W. Stuchel. The defendant denied that she had given any authority whatever to Stuchel to collect the principal of the debt involved in this suit. J. W. Stuchel testified in substance as follows: He had authority to negotiate loans for Mrs. Ulen and collect the interest thereon, but he had no general power of attorney for her, nor could he release any mortgages. He commenced to loan money for defendant about 1914, and placed more than twenty loans for her for the next ten years, including the Knecttle loan, the aggregate of the loans amounting to more than $25,000. He collected each of these loans, including the loan here in controversy, which he collected on September 28, 1926, and for which he gave a receipt, as agent for Mrs. Ulen. The money was paid by C. W. Dye, who bought the land which was security for the loan involved in this case from Knecttle, the money being part of the purchase price of the land. The money so paid was never remitted to Mrs. Ulen, but Stuchel, for the period of three years, continued to send her regularly every six months the sum of $50.00, as interest at 10 per cent on the loan for that period. He first stated that he did not do so, but being shown letters showing this fact, he admitted it, but could give no explanation therefor. He attempted, however, to show that he reloaned this money to S. B. Porter, and to enforce this point testified that he was authorized at various times to reloan money of defendant which he collected, and produced in court a letter of August 2, 1916, written to him by defendant, stating: "glad you have been able to place all the moneys you had on hand. The $3000 is ready any time you can use it." He at first mentioned the fact that the money collected

from the Knecttle loan was embodied in a loan of $1900 to S. B. Porter, but when defendant produced a note of $1900 signed by Porter which was dated October 15, 1924, he explained that he thought he made a subsequent loan to Porter, though he was not able to tell the details thereof. Some of the securities he kept in his possession for a considerable period of time, mentioning particularly that Mrs. Ulen was gone part of the time to Europe and he had specific instructions to keep the securities for loans made during that period until her return. All of the securities were sent in, except one, a loan to Tom Herbst, for $200, secured by a chattel mortgage, running but a short time. All mortgages were taken in the name of the defendant, and were duly recorded in the county where the land was situated. Sometimes, if he could place a loan, he would let defendant know, and she would send the money; several times she asked him to put money out for her. Every loan was a separate loan, and a separate transaction. He was to receive one per cent of the principal of each loan, and 10 per cent for collecting the interest. He did not, however, charge anything on the amounts sent in on the Knecttle loan after it was paid.

"Q. In any of these matters of your collections of any money for Mrs. Ulen, before you collected the money did she ever give you express instructions to collect any amounts for her? A. No. Q. And in every instance, when you collected anything on any of these securities and they had to be released, it required Mrs. Ulen's personal signature to the release, did it not? A. Yes. Q. You would send to Chicago and get a release, and then make the collection of the principal or interest, as the case might be, and remit it to Mrs. Ulen? A. Not just that way. Q. Well in many instances? A. Sometimes I had to make remittance and then get my release, sometimes I would send (for) a release and then I would make remittance. Q. But you couldn't do, at any time, a single thing with that security or remittances, without her signature or her express authority? A. Not in releasing."

"Some of the time" she required the money to be in her hands before she sent a release. The note in controversy in this case was payable at the office of J. W. Stuchel; the S. B. Porter note was payable at a bank at Shoshoni. On November 25, 1933, Mrs. Ulen wrote a letter to Stuchel, complaining that the latter had not complied with her request for a statement, and "effective as of this date any arrangements had by you as acting agent for me is hereby rescinded." It was admitted on the trial that Stuchel had authority to collect interest on defendant's loans.

In this case, the so-called agent to whom payment of the principal sum of the indebtedness was made was not in possession of the evidence thereof, and it is insisted that without it, the payment to him was made at the risk of the debtor. There are numerous cases dealing with a situation similar to that at bar. We have never had one like it before us, and we have, accordingly, thought it best to make a reasonably thorough investigation of the authorities, and to determine at least their general trend, bearing in mind that, after all, each case must to a more or less extent rest upon its own facts, and there may be various combinations of these facts. Although the general rules governing herein are reasonably well settled, the courts have varied to some extent in giving effect to the possession of the evidence of indebtedness, or the absence thereof. The earlier cases seem to indicate that such possession was almost indispensable in order that payment to another than the creditor would be effective. The first case on the subject seems to have been Gerrard v. Baker, cited in Henn v. Connisby, 1 Chan. 93, 22 Engl. Rep. 710, the date of which is unknown. It was there held that though an agent customarily received payments of money for the creditor, yet when the latter did not trust the agent with the evidence of indebtedness, payment to the latter was held not to be

good. In Henn v. Connisby, supra, decided in 1667, the so-called agent had made a loan for the creditor; the latter had always kept the evidence of indebtedness in his possession. It was held that payment to one who, as agent, had loaned out the money, was not good. In Wostenholm v. Davies, 2 Freeman Ch. Rep. 289, 22 Eng. Repr. 1217, an agent who had procured a loan for the creditor collected interest and one-half of the principal. It was held that authority to receive the remainder of the principal was not to be implied from these facts, when he did not have the evidence of the indebtedness in his possession. The cases on the subject up to 1845 were reviewed in Williams v. Walker, 2 Sanford Chan. 325. In that case, as in this, the agent was authorized to place loans for the owner and collect the interest. Part of the principal was paid to the agent while he had the evidence of indebtedness in his possession, part while he did not. The court held the payments which were made while thus in possession to be good, the remainder not, for it is said that the withdrawal of the securities raises an implication of a termination of the power previously possessed (2 C. J. 625), and that it is the debtor's duty every time when he makes a payment to ascertain that the evidence of indebtedness is in the hands of the person to whom he pays. 2 Am. Jur. 129. In Smith v. Kidd, 68 N. Y. 130, too, the court reviewed the earlier authorities and gave them its approval. And in some of the later cases it is held that "the mere act of paying the principal debt to one not the holder of negotiable instruments, and not in possession of them, is such gross negligence upon the part of the debtor that it is difficult to conceive how he could rely upon an apparent or ostensible authority of such agent to receive the payment." Griswold, Halette & Parsons v. Davis, 125 Tenn. 223, 141 S. W. 205; Whalen v. Vallier, 46 Idaho 181, 266 Pac. 1089. In Loizeaux v. Fremder, 123 Wis. 193, 101 N.

W. 423, the court said that "commercial paper has always been favored in the law, not less for the ultimate benefit of the giver than of the holder, and the rule just referred to (of paying the holder) is in line with that policy. It is so simple, and once understood, furnishes so easy and sure a means for both debtor and owner to protect themselves against unauthorized acts of others, that it ought not to be weakened or confused." See also Goodyear v. Williams, 73 Kans. 192, 85 Pac. 300, and Bartel v. Brown, 104 Wis. 493, 80 N. W. 801. In Jones on Mortgages (8th Ed.), Sec. 1231, it is said that "the rule has been generally adhered to in adjudged cases that the possession of the securities by the agent is the indispensable evidence of his authority to collect the principal." The statement is misleading, as is shown by the following section of the author's work, and whatever may have been thought by the courts of the early period, or by some of the courts in individual cases now, the authorities are at present generally agreed that want of possession of the evidence of indebtedness, while of great weight (21 R. C. L. 868), is not conclusive on the question as to whether or not authority to collect the principal thereof exists. 2 C. J. 625; 2 American Jurisprudence, page 131. And if such authority exists, payment to the agent is effective.

If the person to whom payment of commercial paper is made does not have possession thereof, the burden rests upon the payor to prove, in order that such payment may be held to be good, that such person has authority, actual or ostensible, to receive such payment. 2 C. J. 623; 21 R. C. L. 868. And the extent of such authority must be shown. 2 C. J. 925. Actual authority may be express or implied. Since there is some confusion in the cases as to what constitutes express authority, we may say that we understand thereby authority distinctly, plainly expressed, orally

or in writing. Implied authority may, and in fact must, be shown by the course of dealing of the parties and other circumstances in the case. Frequently correspondence between the parties appears, and it may at times be difficult to tell whether the authority shown thereby, if any, is express or implied. There is, however, no difference in the effect thereof. Apparent or ostensible authority is that which the principal holds the agent out as possessing, or which he permits the agent to represent that he possesses. 2 C. J. 570. In order that the principal may be bound in such case, the person dealing with the agent must have knowledge thereof and must have acted in reliance thereon. 2 C. J. 570, 575; Haskin v. Langdon, 127 Nebr. 535, 256 N. W. 8. Courts at times have not observed this difference, so it is hard sometimes to say whether they have meant that actual or ostensible authority existed under the particular facts. In the case at bar the debtor did not take the witness stand. There is no testimony that Mrs. Ulen held out Stuchel as possessing the authority to collect the principal of her indebtedness, or that the defendant relied on any holding out by the agent. Hence no ostensible authority has been shown herein. That is true also as to express authority, and if any such authority existed it must be implied from the facts and circumstances shown in the case.

It has been shown herein that the evidence of indebtedness was made payable at the agent's office; that he negotiated the loan in question herein, and that he was authorized to collect the interest. It is universally held, however, that the fact that an agent negotiates a loan gives him no implied authority to receive payment thereunder without the possession of the evidence of indebtedness. 2 C. J. 621; 21 R. C. L. 869. The same rule applies, except in special cases (hereinafter mentioned) if the evidence of indebtedness is payable at the office of the agent. 2 C. J. 622; Note, 21 L. R. A.

N. S. 52; 2 Am. Jur. 132; 21 R. C. L. 869. That is true also, if the agent has authority to collect the interest merely (2 C. J. 621; 2 Am. Jur. 127, 130; 21 R. C. L. 869; Union Central L. Ins. Co. v. Brewer, (Tex. Civ. App.) 60 S. W. (2d) 849, 851), although it has been held to be a circumstance in determining whether authority to collect the principal has been given. Haskin v. Langdon, 127 Nebr. 535, 256 N. W. 8. We have found no case in which the combination of the three factors above mentioned alone has been held sufficient to give rise to an implied authority to collect the principal. The contrary seems to be indicated in Tilton v. Boland, 147 Ore. 28, 31 P. (2d) 657. We have, however, in this case, the fact, upon which much reliance is placed, that Stuchel collected the principal of over twenty loans made by the plaintiff herein through Stuchel, thus evidencing a series of acts of the same nature. It is said in Restatement of the Law of Agency that "acquiescense by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future." The rule has been recognized and applied in many cases. 2 C. J. 441-443; Cummings v. Hurd, 49 Mo. App. 139; Haskin v. Langdon, supra; Williams v. Cook, 289 Pa. 207; Dobbs v. Zink, 290 Pa. 243. We shall consider the authorities in view of that general rule, later in this opinion examining the specific nature of the acts of collection herein more closely.

The rule regarding a series of acts of the same nature is exhibited in cases involving partial payments. Taylor v. Oliver, 137 Ark. 515; Griffin v. Halbert, 196 Ill. App. 601; Garrels v. Morton, 26 Ill. App. 437; Plunckett v. Raniszewski, (Pa. Superior Ct.) 165 Atl. 629; Goll v. Ziegler, 61 Pa. Super. Ct. 616; Borland v. Wible, 94 Pa. Super. Ct. 41; Loizeaux v. Fremder, supra; Goetzman v. Danitz, 116 Misc. 140, 189 N. Y. S. 788; Williams v. Cook, 289 Pa. 207; Doyle v. Corey, 170 Mass. 337, 49 N. E. 651; Ragatz v. Diener, 218

Iowa 703, 253 N. W. 824. Compare: Quinn v. Dressbach, 75 Cal. 159, 16 Pac. 762; 7 A. S. R. 138; International L. Ins. Co. v. Bradley, 114 Okl. 231, 246 Pac. 222; Phoenix Ins. Co. v. Walter, 51 Nebr. 182, 70 N. W. 938. Counsel for plaintiff cites and relies on Quinn v. Dressbach, supra, as justifying the judgment herein. That case is one of the extreme cases, favorable to the debtor. Other cases, above cited, are not as liberal toward him. In any event the foregoing cases, all involving partial payments, deal mostly with ostensible authority, for which they are eminently suitable; but they do not deal, at least to any great extent, with implied authority, and we shall not, accordingly, analyze them, but turn to cases more direct in point herein, and exhibiting some or all of the characteristics in the case at bar. We shall first turn to cases which apparently hold that a series of acts or collection of principal on different loans does not show authority for the collection of principal in future cases.

One of these cases is Smith v. Kidd, supra. The case, however, exhibits special facts, which we shall analyze more closely hereafter, and we therefore pass this case at this time. The case of Mynick v. Bickings, 30 Pa. Super. Ct. 401, is often cited. There it was sought to be shown that one Jones, an attorney, was employed by plaintiff, the mortgagee, as agent in loaning money on mortgages and the collection of the principal as well as the interest on these loans, and that this course of dealing continued throughout. The court said in part:

"The argument is that if the plaintiff allowed or employed Jones to collect money on loans made by her and pay the same to her such action invested him with authority to receive and receipt for principal or interest in any bond or mortgage which she held, without express authority to do so; and in this view of the case, it would not seem to make any difference whether the number of loans was large or small. The act of

Jones with reference to two or three loans would commit the plaintiff to responsibility for his conduct with reference to the one now under consideration or others which may have been made by plaintiff * * *. They (the securities) were not in possession of Jones at any time when payments were made. The defendant had not been requested to make payment to Jones, nor had the plaintiff held out the latter as having authority to receive payments on the debt. Relying on his integrity and apparently to avoid the inconvenience of finding the plaintiff and paying her, he gave the money to Jones to be paid over. In so doing, he assumed the risk that Jones might not act in good faith. * * * Generally speaking, it is the duty of a debtor, who is bound by an obligation in writing to see that the person to whom he pays the money for his creditor has possession of the evidence of indebtedness, unless he can show express authority in the person to whom the payment is made to receive the money. Loans made by the plaintiff were independent transactions completed when the security was delivered and the money paid. The completion of one transaction would not invest the attorney with power to act in another outside of the express authority given him or that implied in his engagement as an attorney in professional business."

The case was distinguished in Williams v. Cook, supra, and Colonial Trust Company v. Davis, 274 Pa. 363, on the ground (with some basis) that the acts of collection of principal in the Mynick case were occasional in character only, and not exhibiting a general custom extending through a number of years. That an occasional collection of principal does not warrant a conclusion of general authority to collect other principal is also held in Ross v. Johnson, 171 Wash. 658, 19 P. (2d) 101, in which the court said that it had adopted a more stringent position in cases of this character.

An interesting case is that of Nichols v. McDougal, 175 Wash. 536, 27 P. (2d) 699. McDougal stood in the

place of the mortgagor; Simpson was the agent; Nichols the mortgagee. The court, stating some of the facts and its conclusion, said in part:

"As tending to establish a general agency, the court found that Simpson, with Nichols' consent, retained 12½ per cent of all interest collected as commissions for making collection; that Simpson kept a general ledger account of his transactions with Nichols, rather than treating each loan as a separate transaction; that on one occasion Simpson collected the principal of a loan and gave Nichols his note for the amount, instead of the money; that Nichols had placed a number of loans through Simpson. The court found further that '* * * in connection with said loans the said Simpson was specifically authorized to collect interest and principal, when due, and all amounts were payable at the office of Simpson; that on all occasions the said Simpson collected the principal and interest without having possession of the notes and thereafter turned the principal over to Nichols, who in turn delivered the notes to Simpson or credited the interest payments on the back of the notes; that in closing all of said loans the checks were made payable to Simpson and he paid the money to the mortgagors.' * * * We do not think, however, that the findings are sufficient to establish a general agency * * *. Here the mortgagors knew they were dealing with an agent. They were bound to know the extent of his authority. They were not misled by the manner in which Simpson handled Nichols' account, because they did not know about it. Nor, for that matter, did Nichols. So far as he was concerned, each loan was a distinct and separate transaction. Simpson was in no sense his fiscal agent. At no time did he leave funds in Simpson's hands for investment generally in mortgage loans."

The case apparently is strongly in plaintiff's favor. In fact, however, it is not in point, for the reason that the real question in that case was whether or not the agent had authority to collect the principal before it was due. The cases seem to be uniform that authority of an agent to receive payments of principal and inter-

est does not, ordinarily at least, authorize him to receive such payments except on the dates when they are due under the contract. Note 100 A. L. R. 390.

In other cases, courts, without attaching "great weight" (21 R. C. L. 868) to the non-possession of the evidence of indebtedness, have quite readily drawn the conclusion that an agent had authority to collect the principal indebtedness, even in the absence of a series of acts of collecting such principal. The first of this class of cases is Spencer and White v. Wilson, 4 Munford (Va.) 130, decided in 1814. In that case Cavan was the agent for the sale of land. When the sale of a certain tract of land was made, three notes were given. One of them was sent to the agent for collection and paid. Two of them were retained in the owner's possession, but the amount thereof was paid to the agent who failed to account therefor. It was held that in view of these facts and the fact that "Cavan was generally reputed and considered as the agent of the appellee (the owner)," the payment on the last two notes was good, though not in the agent's possession. The case was severely condemned in Williams v. Walker, supra, where it was said that the "case itself is either carelessly reported or was a loose decision." We are not certain, however, that some of the more recent decisions rest upon much firmer ground. In Campbell v. Gowans, 35 Utah 268, 100 Pac. 397, 23 L. R. A. N. S. 414, cited by counsel for plaintiff in support of his contention, an agent who had negotiated a loan for the creditor, collected the interest thereon and remitted it; he also collected the principal, but failed to account for it. The agent had not been prompt in his remittances, and the creditor was warned not to trust him too far. The court held the facts sufficient to show ostensible authority. It is difficult to see how ostensible authority to collect the principal can be gathered from the making of the loan and the collection of interest.

At least most of the courts hold to the contrary. The case really rests upon the independent principle that when one of two innocent parties must suffer, it should be the party who is most at fault. In fact the court so states in one part of the opinion, and we are not prepared to hold that the decision, based on that theory, is not correct. A similar feature of warning or knowledge of dishonesty is mentioned in Brown v. Hoeckstra, 279 Pa. 419, and Masterson v. Hailett, 119 Wash. 650, 206 Pac. 359 (also cited and relied on by plaintiff), and the same principle just mentioned was applied. We have no such case before us. In Sax v. Drake, 69 Iowa 760, a note was made payable to Briscoe, the agent or bearer, but the loan was actually made for Sax, the owner. The latter for several years did not let the maker of the note know that he held it. The interest was paid to the agent from year to year, receiving the agent's receipt. The court said that "the plaintiff (Sax) knew perfectly well that the maker supposed that the payment of the interest to Briscoe was good, and that he might proceed to pay him the principal when due, unless he was notified to the contrary, which was not done. We have not a doubt that the plaintiff intended to collect the whole note through Briscoe." In the case of Security State Bank v. Soule, 70 Mont. 300, 225 Pac. 127, it appears that the mortgagor gave a note with interest coupons to the plaintiff bank, payable at the office of Cumming, agent, who negotiated the loan to the bank through Fish, a friend of the agent. Three interest coupons were paid to the agent Cumming and remittance made by him. The last two interest payments and the principal collected by him were converted by him to his own use. He never had the note in his possession after it was negotiated to the bank. The bank had no knowledge of the payor, did not correspond with him and did not bring an action for foreclosure until five years after the note

was due. The court held that the evidence was sufficient to find that Cumming was the agent of the bank. Under a somewhat similar state of facts the court in Mulcany v. Fenwick, 161 Mass. 164, came to a different conclusion.

In quite a number of cases, involving the collection of interest and principal by a series of acts, without possession of the evidence of indebtedness, courts have held that authority to collect the principal of the loan in question had, in the particular case, been sufficiently shown. See note, 23 L. R. A. N. S. 420. One or more other elements generally entered into the case; e. g., looking after insurance; Walner v. Redinger, 116 Kans. 573, 227 Pac. 328; looking after taxes: Edinburgh American L. M. Co. v. Noonan, 11 S. D. 141; Meserve v. Hanford, 59 Kans. 777, 53 Pac. 835; having no one else to look after the loan: Meserve v. Hanford, supra; Pine v. Mangus, 76 Nebr. 83; that the agent collected funds, and kept them for a period of time, either for subsequent remittance or for reinvestment: Meserve v. Hanford, supra; Williams v. Cook, supra; Harrison National Bank v. Williams, 2 Nebr. Unofficial 400, 89 N. W. 245; General Convention v. Torkelson, 73 Minn. 401, 76 N. W. 215; Haire v. Bailey, 73 Minn. 409; Sharp v. Knox, 48 Mo. App. 109; Hoffman Bros. v. Bank, 159 Okl. 81, 14 P. (2d) 412; Dobbs v. Zink, 290 Pa. 243; attending to foreclosures of mortgages; Meserve v. Hanford, supra; Harrison · Nat. Bank v. Williams, supra; Edinburgh American L. M. Co. v. Noonan, supra; relying on an agent to pick out the security: General Convention v. Torkelson, supra; Edinburgh American L. M. Co. v. Noonan, supra; Sharp v. Knox, supra; Dobbs v. Zink, supra; representing the creditor in the first place: Williams v. Cook, supra; the creditor not notifying the debtor or communicating with him, but trusting to the agent to look after the loan: Dandois v. Raines, 115 Okl. 88,

241 Pac. 1099; Sherill v. Cole, 144 Okl. 301, 291 Pac. 54; Shoemaker v. Ragland, 202 Iowa 947, 211 N. W. 564; Security State Bank v. Soule, 70 Mont. 300, 225 Pac. 127; contra, Mulcany v. Fenwick, supra. If, on the other hand, the creditor in fact selects the security, accepting or rejecting a loan according to his judgment, this has been held to have a tendency to show that the agent had no authority to collect the principal. United States Bank v. Burson, 90 Iowa 191, 57 N. W. 905; Security Co. v. Graybeal, 85 Iowa 543, 52 N. W. 497; Fortune v. Stockton, 182 Ill. 454. Mechem, in his work on Agency (2nd Ed.) Sec. 938, selecting a strong combination of factors, states:

"* * * the principal may, by the course of dealing or other conduct, justify an inference of authority which will be independent of possession. Thus, where the principal has confided to a loan agent money to be invested and has relied upon the agent to select the security and determine upon the loan, has permitted him to receive payment of principal and interest when due, has allowed him to reinvest the proceeds from time to time, and has treated him as having general authority in the premises, payments of principal or interest to such agent have been held to justify a finding of authority in fact to bind the principal, even though the agent may not at the time have had possession of the securities."

But in Section 940 the author proceeds:

"The inference of an actual or apparent authority in these cases is quite easy to over draw, and the very hardship of many of the cases seems to furnish a strong temptation to do so. Nevertheless, it is an inference which should be drawn with caution. It is not ordinarily to be presumed, for example, that, where negotiable securities for the debt are outstanding, the creditor expects to demand, or the debtor to make, payments without the surrender or indorsement of the securities. So where the payment is secured by mortgage, it is not to be presumed that the debt is to be paid without a surrender and discharge of the mort-

gage. The fact that the principal, though in a number of instances, may have expressly confided the securities to the agent for the purpose of receiving a payment upon them ought not to be construed as evidence of a general authority to receive payment at a time when they have not been so confided to him. *A fortiori* would this be true where it appeared that, in nearly all cases, the principal refused to send the securities to the agent until the money had first been paid to him."

In some of the cases the chief, or only, factors which were held sufficient to establish authority to collect the principal of indebtedness were, that the agent was authorized to collect the interest and had in a number of cases and as a regular practice collected the principal of different loans: Bautz v. Adams, 131 Wisc. 152; Colonial Trust Co. v. Davis, 274 Pa. 363; Esty v. Snyder, 76 Wisc. 624; Walmer v. Redinger, supra. The Bautz case is cited with confidence by counsel for Mrs. Ulen as sustaining their view that no authority was given to Stuchel to collect the loan involved herein, and as holding that "agency to receive payment of money due upon commercial paper secured by mortgage or otherwise can only be implied from possession, by the one assuming to have authority in the matter, of the securities and capacity to deliver the same upon payment being made." But counsel evidently did not read to the end of the case, for the contrary is held. The case is misleading in confusing express and implied authority.

However, the case at bar does not, so far as the evidence shows, fall within the Bautz case or the other cases just cited. The testimony shows, as already stated, that sometimes the agent had to make remittances and then get the release, sometimes he would send a release and then he would make remittance. Mechem, supra, Sec. 940, states that "the fact that the principal though in a number of instances, may have expressly confided the securities to the agent for the

purpose of receiving a payment upon them ought not to be construed as evidence of a general authority to receive payment at a time when they have not been confided to him." The statement is supported by ample authority. Budd v. Broen, 75 Minn. 316, 77 N. W. 979; Smith v. Kidd, supra; Fortune v. Stockton, 182 Ill. 454; East Hampton Bank & T. Co. v. Collins, 287 Mass. 218, 191 N. E. 379; Bacon v. Pomeroy, 118 Mich. 145, 76 N. W. 324; Joyce v. Vance, 104 Mich. 97; Goetzman v. Danitz, supra; Rhodes v. Belches, 36 Or. 141, 59 Pac. 117; Church Ass'n. v. Walton, 114 Mich. 677; Schenk v. Dexter, 77 Minn. 15; Brants v. Runnells, (Mo. App.) 26 S. W. (2d) 1004. In Smith v. Kidd, supra, a number of loans were collected by the agent by the express authority of the creditor. The court said:

"If in these instances, the plaintiff placed the securities in his possession, or delivered satisfaction pieces to him prior to his receiving the money, or otherwise expressly empowered him to collect the principal, they would afford no evidence of an actual general authority to collect mortgages not placed in his hands. * * * If the fact, that a capitalist makes investments on bond and mortgage through an attorney, and employs him to collect the interest, and in special cases authorizes him to collect the principal of particular mortgages, is sufficient to warrant a finding of general authority to collect the principal of all the mortgages of the client, notwithstanding, that the client takes the precaution to retain his securities in his own possession, no investor would be safe. Therefore, the rule has, in the adjudicated cases, been strictly adhered to, that the possession of the securities by the attorney, is the indispensable evidence of his authority to collect the principal (1 Molloy, 487), and that whoever pays him without that evidence does so at his own risk, unless he can prove express authority aliunde, and that the fact that the agent has, on other occasions, received principal which he has paid over to his client is not, in this instance, proof of such authority."

In Budd v. Broen, supra, the court said:

"The fact that she did not leave the securities with her loan agents, but retained them in her exclusive possession, is very potent evidence that she did not intend to confer upon them such general authority. By so retaining her securities, and sending them for collection only as they became due, she could keep a wholesome check upon her agents, and avoid the possibility of loss through them, except as to the particular securities sent for collection. If, in such cases, the money was not remitted or the papers returned within a reasonable time, she could investigate, and at once learn whether her agents were in default. But if she conferred general authority upon them to collect the principal of any or all of her loans without first receiving the securities, she would hazard the whole of them, for she would then have no check upon her agents, or means of knowing when or what payments were made. The defendant, having paid his note and mortgage to the Kelleys, without requiring a surrender of the securities, assumed the risk of establishing the authority, express or implied, of the agents to receive such payment for the plaintiff. We are unable to find in the record any evidence that justifies the finding that the agents were so authorized. Their authority was to receive payment for the plaintiff whenever she forwarded her securities for collection, and there is no evidence warranting the conclusion that she ever knew that the Kelleys ever assumed to collect the principal of her mortgages without having first actually received them from her; hence there is no evidence of ratification of their acts, or of actual implied authority to receive payment of the note and mortgage in question."

In the case of Brants v. Runnels, supra, the court said in part:

"Plaintiffs introduced much evidence tending to show that the Mortgage Company * * * collected for defendant at her request the principal (and in some instances before due) of the Handler, Jones, Wagner and Roberts notes, but their testimony falls short of showing that these * * * collections were not made by the prior authority of the defendant in each instance,

and the burden to show that they were so made was upon the plaintiffs. * * * Her evidence likewise shows that it at no time made any collection of the principal without prior authority from her in each instance. The evidence is undisputed that in each instance in the matter of a collection defendant was first notified that the borrower was about to pay his note and she was requested to bring in her papers, which she did (in the Wagner case after the note was paid), thus showing a direct prior authorization to the Mortgage Company to make the collection for her in each instance. These circumstances surrounding the * * * collections of the loans show that defendant did not permit the Mortgage Company to have possession of her papers, except for the purpose of making a collection thereon (and in the Wagner case after the collection but with prior authorization), and evinces, if anything, an intention on her part not to give it general authority to make collections of principal for her, but to retain the power to confer or refuse authority upon it in each instance."

Those instances, accordingly, in which the defendant sent a release to the agent before payment was made, afford no evidence that the agent had authority to collect the principal of indebtedness in other cases. However, it appears that in some instances, the number not appearing, the agent had to send the money first before obtaining the release. Mechem, supra, Sec. 940, states that in such case no general authority to collect the principal should be inferred. He cites Security Co. v. Graybeal, 85 Iowa 543, 39 A. S. R. 311; Western Security Company v. Douglass, 14 Wash. 215. In these cases the notes involved were payable at the place where the creditor lived, far away from the home of the debtor. It is readily seen, of course, that in such case it was the duty of the debtor, either to transmit the money himself, or procure someone else to transmit it for him, and no authority from the creditor to collect should be inferred. If the notes, however, are payable at the office of the agent, and if in such case the creditor regularly withholds the evidence of indebtedness

from such place, but requires the transmission of the money due to the home of the creditor, and this is done through one not the debtor, such course of conduct would, it seems, have a tendency to show that the agent has authority to collect the money. Hamlin v. Nace, 99 Kans. 286, 161 Pac. 655. But the court in such cases should consider all the evidence and determine whether the creditor did not have as much right to assume that the agent was acting as agent for the debtor, as the debtor had a right to assume that the agent was acting on behalf of the creditor. Church Association v. Walton, supra; Bromley v. Lathrop, 105 Mich. 496; Mulcahy v. Fenwick, 161 Mass. 164; Ortmeier v. Ivory, 208 Ill. 577, 70 N. E. 665.

Turning, then, to the case at bar, we think that we are constrained to hold that the plaintiff has failed to sustain the burden of proving that the agent had authority to collect the principal of the indebtedness in question. His (then) counsel evidently tried this case upon the theory that when it was shown that the agent collected some twenty loans for the plaintiff, authority to collect the principal indebtedness was shown, without reference to the circumstances under which such collections were made. That is not the law. Acquiescence in a series of acts is evidence of authority for the future only when the acts are of a like nature. Cummings v. Hurd, 49 Mo. App. 139 and cases cited. We have already seen that authority to collect, with a release or the evidence of indebtedness in possession, does not warrant an inference to collect under other circumstances. It does not appear how often collections were made without such possession, whether once, twice or oftener; whether such collections were made pursuant to a regular course of practice or at least sufficiently often so as to warrant an inference of authority. Too much was attempted to be proven when the agent was asked as to whether any express

instructions were ever given by the defendant in connection with the collections of the loans, for the question included the collections with the release in the agent's hands, and the answer therefore is of little force. The note in suit was payable at the office of the agent. It does not appear where the other notes were payable, except the one given by S. B. Porter, which was not payable at the agent's office. For aught that appears the other notes were payable at Chicago so as to come within the rule mentioned by Mechem, supra, Section 940. The broad testimony as to money collected by the agent, retained in his possession and reloaned by authority of defendant, is in the absence of more details unsatisfactory, since it seems to be too closely connected with and dependent on the apparent retention of the money on the loan in question. The letter of August 2, 1916, is as consistent with the theory that the money already in the hands of the agent was money previously sent him by defendant as it is with the theory that it was money theretofore collected by the agent, and cannot be considered of great force, without explanation or corroboration. The letter of November 25, 1933, that "all arrangements had by you as acting agent for me is hereby rescinded," may relate merely to the agency for collecting interest, which defendant admitted. The fact that at one time the agent retained a $200 loan which ran for but a short time, while competent to be shown, is, in view of the circumstances, in itself of little weight, and the fact that he retained securities till defendant returned from Europe is, under the circumstances, even of less weight. For aught that appears the debtor may have trusted the agent considerably more than the creditor did. We might, however, in this connection, mention the fact that a collection made by an agent may, of course, be ratified by the principal. It appears that a suit for an accounting was brought by the defendant

against the agent. It may be that defendant thereby ratified the collection of the loan herein, or that suit may show, or tend to show, previous authority. But there is nothing in the record to indicate that it involves the money in controversy herein, or has any connection therewith, and hence we cannot take it into consideration herein.

It seems clear to us that not all facts in this case have so far been brought out, and taking into consideration the unsatisfactory state of the evidence so far appearing herein, using the caution which according to Section 940 of Mechem, supra, should be used; giving due weight to the fact that Stuchel did not have the evidence of indebtedness or any release in his possession; bearing in mind that the average debtor knows that when he pays his debt he should have the evidence thereof cancelled and his mortgage, if any, released, we think that the judgment herein should be reversed, and the cause remanded for a new trial. It is so ordered.

*Reversed and remanded.*

KIMBALL, Ch. J., and RINER, J., concur.